Arlene **TAVARES**, Plaintiff,

v.

**UNUM CORPORATION**, Defendant.

**No. Civ.A. 96–614L.**

United States District Court,
D. Rhode Island.

Sept. 2, 1998.

Kevin F. Bowen, Providence, RI, for Plaintiff.

Katherine K. Russum, Benjamin V. White, III, Brooks R. Magratten, Vetter & White, Providence, RI, for Defendants.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on the motion for summary judgment filed by defendant Unum Corporation ("UNUM" or "defendant") pursuant to Rule 56 of the Federal Rules of Civil Procedure and the cross motion of Arlene Tavares ("Tavares" or "plaintiff") for partial summary judgment. At issue is whether defendant, a Maine Corporation violated 29 U.S.C. §§ 1001 et seq., known as the Employee Retirement Income Security Act ("ERISA") specifically § 1133 and the regulations promulgated thereunder when it terminated plaintiff's partial disability benefits on August 15, 1995 and reaffirmed that termination for a different reason on April 22, 1996.

In her original complaint, plaintiff alleged three separate causes of action against defendant. At an earlier date, this Court dismissed Counts II and III (state law claims preempted by ERISA), leaving only Count I for disposition. In Count I, plaintiff alleges that UNUM violated ERISA, specifically §§ 1133 and 1132(a)(1)(B), when it revoked plaintiff's partial disability benefits on August 15, 1995 for an erroneous reason and in a manner which violated the mandate of ERISA's notice requirement. After a review of additional information, UNUM reasserted that termination by letter dated April 22, 1996. Plaintiff claims that this letter of April 22, 1996 also failed to comply with the notice requirements of ERISA and that UNUM, in addition, failed to provide her with a timely review of that decision. Plaintiff seeks a determination from the Court that her partial disability benefits were wrongfully terminated and thus should be reinstated retroactively to the time of initial termination. In addition, plaintiff requests a money judgment for past due benefits, plus prejudgment interest, and attorneys' fees and costs. Defendant has denied the essential allegations of the complaint, asserting that at no time did it violate the provisions of ERISA, and thus seeks judgment affirming the termination of benefits.

## I. Background

Tavares is an office worker at the Newport Harbor Corporation, a Rhode Island Corporation ("NHC") and a participant in the NHC Long Term Disability Plan (the "Plan") [1]. UNUM is the Claims Administrator for the Plan. On October 21, 1992, as she was returning to her office from a work related errand, plaintiff was involved in an automobile accident. As a result of the accident, Tavares sustained a herniated cervical disc which she claims caused ongoing neck and back pain and discomfort. On May 19, 1993, she underwent cervical disc surgery. On October 4, 1993, plaintiff applied for partial long term disability benefits, after returning to work on a part time basis on September 23, 1993. Benefits were provided, but on August 15, 1995, UNUM terminated the partial disability benefits, claiming that it was unable to properly investigate her claim. After receiving additional information, UNUM resumed its claim inquiry but reaffirmed the termination by letter dated April 22, 1996.

It is undisputed that the injury Tavares initially sustained prohibited her from working a full forty hour work week during the time period in question. By October, 1993, several months after her surgery, she returned to a thirty hour work week and was hoping to gradually increase her schedule to a full forty hour week. In a November 19, 1993 note, Dr. John R. Parziale, her treating physiatrist, stated that plaintiff was restricted to a thirty hour work week. Plaintiff was also being seen by Justin Nash, Ph.D., a clinical psychologist and Dr. James McLennan, a neurosurgeon. Defendant claims that these doctors had conflicting opinions as to plaintiff's work capacity.

Plaintiff was engaged in litigation with her employer's workers' compensation carrier, Wausau Insurance Company, from February 15, 1995 to October 17, 1995. During this time period, she was also a plaintiff in a civil tort action arising out of the same accident. Plaintiff had made UNUM aware of both these pending actions. In February of 1995, UNUM notified plaintiff that it intended to limit her eligibility for partial disability benefits to a maximum of 24 months because it believed the primary cause of her disability was psychological and that she would be expected to return to full time work within eight weeks. Plaintiff claims that both she and her doctors disagreed with UNUM's assessment of her situation.

As a result of that above mentioned disagreement, on or about March 13, 1995, plaintiff revoked the full medical authorization previously given to UNUM but agreed to provide UNUM with any medical records it might request. On April 13, 1995, UNUM wrote to plaintiff's attorney advising him that a signed medical authorization would be required before UNUM could process plaintiff's claim. In response, plaintiff's attorney requested that UNUM inform him of the particular plan provisions which required plaintiff to execute a medical release before claim processing could occur. On April 21, 1995, UNUM informed plaintiff's attorney that since it had a legal duty, it therefore had a legal right to investigate claims submitted under the Plan and that case law supported an insurer's right under appropriate circumstances to speak with medical providers. On May 3, 1995, plaintiff's attorney informed UNUM in writing that plaintiff would be willing to provide a medical release form for all her relevant medical records but would not expand the scope of that release until the completion of the workers' compensation hearing. That matter had originally been scheduled to conclude on May 31, 1995 but was continued for further hearing until July 7, 1995

1. The Plan provides, in part:
    "Partial disability" and "partially disabled" mean that because of injury or sickness the insured, while unable to perform all the material duties of his regular occupation on a full time basis, is
    1. performing at least one of the material duties of his regular occupation ... on a part-time ... basis, and

2. currently earning at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.
    Disability benefits will cease on the earliest of
    1. the date the insured is no longer disabled;
    2. the end of the maximum benefit period
    3. the date the insured's current earnings exceed 80% of his indexed pre-disability earnings.

On June 8, 1995, plaintiff received a letter from UNUM informing her that the signed authorization form would be required before the claim could be properly reviewed. On June 22, 1995, plaintiff received a letter from UNUM stating that the authorization had not been received and that it would be required before the claim could be processed. On July 12, 1995, Tavares received a third letter from UNUM stating that the medical release had not yet been received and unless it was received before August 14, 1995, the file would be closed. On July 10, 1995, before the July 12 letter was received, plaintiff sent the fully executed medical authorization form to UNUM through her counsel. On July 17, 1995, plaintiff received a letter from UNUM acknowledging receipt of the medical authorization form. On or about August 15, 1995, Tavares received a letter from UNUM terminating her benefits as follows:

> We have been unable to investigate your claim for partial disability benefits because of a letter sent to us on 3/13/95 revoking all authorizations from you to enable us to obtain medical information and to speak with your physicians. Because of your decision to withhold this information from us we cannot make a decision based on the information in your file about your work capacity. There is conflicting information in your file and we can't investigate this information to the extent we need to.
>
> ... Therefore the letter sent to you on 7/12/95 stating that if we don't receive this authorization from you by 8/14/95 then we will close your file is in effect right away
> ...

Plaintiff claims that at the time of receipt of this letter, she had no knowledge of what UNUM meant when it referred to "conflicting information" in her file. Additionally, she had signed and sent the medical authorization form to UNUM as it had requested and was only restricting direct contact with her doctors until the depositions in the workers' compensation proceeding were complete. By letter dated August 18, 1995, Tavares appealed the termination of benefits. On August 23, 1995, plaintiff was informed by UNUM that her claim would be forwarded to the Quality Review Section ("Quality Review") for an impartial review as required by

ERISA. That letter stated that the review would be completed within 60 days from receipt of the notice.

On October 23, 1995, plaintiff's attorney informed UNUM that since the deposition of one of her medical providers, Dr. Justin Nash, had been completed, plaintiff would now allow UNUM to speak directly with Dr. Nash. In response, UNUM's William Weeks ("Weeks") sent a letter stating that although the decision to terminate benefits was appropriate, the authorization to speak with Dr. Nash would allow UNUM to effectively manage the claim, therefore the file would be returned to the Benefits office for further handling. On January 4, 1996, Weeks wrote an internal memorandum documenting the return of plaintiff's file from Quality Review to the Benefits office for resumption of an investigation of the claim. On or about January 12, 1996, UNUM advised Tavares that it was, in fact, resuming its investigation of her claim.

UNUM requested additional medical information from plaintiff's attorney on January 23, 1996. On March 6, 1996, UNUM was informed by plaintiff's attorney that the requested medical records were being collected and that the decision of the Workers' Compensation Court was not yet final. On March 22, 1996, UNUM received copies of medical reports from plaintiff's attorney and also copies of Dr. Nash's progress notes pertaining to plaintiff's visits between January 4 and March 28, 1995.

On April 18, UNUM sent a letter to plaintiff informing her that they needed proof of continued disability and regular attendance of a physician within 30 days from the date of the letter, otherwise the file would be closed. A Functional Capacity Evaluation Follow–Up Report, as of April 18, 1996, was received by UNUM from Dr. Michael McDonald of the Donley Rehabilitation Center on April 30, 1996. By April 22, 1996, UNUM had also received plaintiff's supplemental statement.

On April 22, 1996, however, UNUM again issued a letter stating that the benefits were terminated. This time the letter stated that the benefits would not be paid because the restrictions that plaintiff's physician had

placed on her, including no overhead lifting or lifting in excess of twenty pounds, were not part of her bookkeeping duties. Therefore, she was not "disabled" under the terms of the policy. The letter said nothing about her claim for partial disability benefits or whether the restrictions would entitle her to such benefits under the Plan. On May 6, 1996, after investigation and review of additional medical and functional capacity information, UNUM sent another letter to plaintiff informing her that it would not reverse its previous decision to revoke benefits. On May 7, 1996, plaintiff appealed that determination. Soon after, UNUM notified plaintiff that her file had been sent to Quality Review. According to the record, no subsequent review occurred.

The present action was commenced on October 25, 1996. Defendant has moved for summary judgment and plaintiff has filed a cross motion for partial summary judgment. Plaintiff presently requests a finding that the termination of benefits was in violation of ERISA and that she is entitled to restatement of the partial disability benefits retroactively to the date when benefits were terminated by UNUM. After hearing oral arguments, the Court took these cross motions under advisement. The matter is now in order for decision.

## II. Standard of Review

■ UNUM has brought a summary judgment motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir.1995)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

Since plaintiff's cross motion requests less than full relief, in reality, this is a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Such a motion is separate and distinct from a motion for summary judgment, discussed in Rule 56(c), although the two are often improperly referred to interchangeably. Rule 56(d) "establishes a procedural mechanism whereby a district court can ... with the acquiescence of the parties, narrow the factual issues for trial" *Rivera–Flores v. Puerto Rico Telephone Co.*, 64 F.3d 742, 747 (1st Cir.1995). The rule itself states the following:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controver-

sy, including the extent to which the amount of the damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly. Fed.R.Civ.P. 56(d). The standard for ruling on a Rule 56(d) motion is "identical to that deployed when considering a summary judgment motion under Rule 56(c)." *URI Cogeneration Partners L.P. v. Board of Governors for Higher Education*, 915 F.Supp. 1267, 1279 (D.R.I.1996) (citing *Flanders & Medeiros Inc. v. Bogosian*, 868 F.Supp. 412, 417 (D.R.I.1994)). Therefore, the standard of review for both motions is the same.

■ This case is further complicated by the fact that the action is governed by ERISA since it involves a claim for benefits under an employer-provided plan. While ERISA itself mandates no specific standard of review, courts have come to review these cases under either an "arbitrary and capricious" or *"de novo"* standard, depending on the level of discretion the plan vests in the plan administrator. *see Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). An "arbitrary and capricious" standard is highly deferential and requires that the administrator's decision be upheld as long as it is " 'rational in light of the plan's provision', as well as, reasonable with no abuse of discretion." *Grady v. The Paul Revere Life Ins. Co.*, 10 F.Supp.2d 100, 104 (D.R.I.1998), *citing Coleman v. Metropolitan Life Ins. Co.*, 919 F.Supp. 573, 581 (D.R.I.1996) (quoting *Perry v. United Food and Commercial Workers District Unions 405 and 442*, 64 F.3d 238, 242 (6th Cir.1995)). A *de novo* review, as the First Circuit stated in *Allen v. Adage, Inc.*, 967 F.2d 695, 701 (1st Cir.1992), "looks to the language of the plan (supplemented in appropriate cases by evidence essential to resolving a relevant ambiguity), not to any one party's interpretation of that language." This writer recently discussed what standard of review is appropriate in various ERISA cases at length in *Grady*.

The U.S. Supreme Court has determined that the standard of review for challenges of ERISA benefit claim denials based on interpretations of plan provisions should be *de novo* unless the "benefit plan gives to the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Grady*, at 104, *quoting Bruch*, 489 U.S. at 115, 109 S.Ct. 948. In *Grady*, this Court concluded that the *Bruch* holding also applies to fact-based ERISA benefit denials challenged under 29 U.S.C. § 1132(a)(1)(b). *Grady*, at 108. Thus, it does not matter whether the termination of benefits was based on an interpretation of plan provisions or on factual determinations. The standard of review will vary only depending on whether the plan administrator was granted discretionary authority by the particular plan.

■ Courts after *Bruch* have struggled to establish guidelines for when a plan gives discretionary authority to the administrator. It is settled that the discretionary authority must be found in clear, plain language, *Id.*, at 109, citing *Allen*, 967 F.2d at 697–98; *Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 29 (1st Cir.1991); *Cleary v. Knapp Shoes, Inc.*, 924 F.Supp. 309, 313 (D.Mass.1996).The confusion arises in determining what constitutes clear language. As this Court noted recently,

> ... [a] finding of this express authority does not hinge on a policy's use of any magic words such as 'discretion.' The policy must, however, set forth terms sufficient such that it can reasonably be found that such power and discretion has been conferred.

*Grady*, at 109, quoting *Coleman*, 919 F.Supp. at 580 (D.R.I.1996) (internal citations omitted).[2] One must be careful to distinguish

---

**2.** *Grady* cited the following as an example of language granting such discretionary authority to the administrator:

> ... power " 'to interpret and construe the Plan, [and] to determine all questions of eligibility and the status and rights of the Partici-

pants,' " and providing that "all decisions of the administrator 'shall, to the extent not inconsistent with provisions of the Plan, be final and conclusive and binding upon all persons having an interest in the Plan.' "

between "garden-variety contract terms specifying the procedure by which claims are to be processed, and by which the [p]olicy is to be administered," *Grady,* at 110, and contract terms which clearly and expressly grant full discretionary authority. "It would require a logical leap of Olympic proportions to find that [garden-variety] provisions give defendant the last word in interpreting the contract, or in determining eligibility for benefits." *Id.*

The difference is between a contract which expresses an agreement that one party has power to make certain determinations under the contract and one which expresses an agreement that one party's determinations under the contract will be final and binding. Although a seemingly small technical difference, the practical and legal implications are significant. Inasmuch as it would be a simple task to add the appropriate language to a contract to expressly clarify that the determinations should be final and binding, courts, therefore, should hesitate before finding such power to be impliedly granted by otherwise ordinary contract terms.

In *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979 (6th Cir.1991), the following plan language conferred discretion:

> An Employee shall be deemed to be totally disabled [and, therefore, entitled to benefits,] only if that Employee is not engaged in regular employment or occupation for remuneration or profit and, on the basis of medical evidence satisfactory to the Insurance Company . . .

*Id.* at 983. In *Block,* the plan expressly conferred full discretionary authority upon the administrator as it granted the administrator "power to interpret and construe the Plan, [and] to determine all questions of eligibility and the status and rights of [p]articipants" *Block,* 952 F.2d at 1452–53. It also stated that all decisions of the administrator "shall, to the extent not inconsistent with the provisions of the Plan, be final and conclusive and binding upon all persons having an interest in the plan." *Id.* at 1453. In d*e Nobel v. Vitro Corp.,* 885 F.2d 1180, (4th Cir.1989),

the Court determined that the administrator's discretionary authority arose from its power "[t]o determine all benefits and resolve all questions pertaining to the administration, interpretation and application of Plan provisions" *Id.* at 1186 (emphasis omitted).

Here, UNUM makes an number of arguments in an attempt to convince the Court that the Plan vests the requisite discretionary authority in the administrator such that the "arbitrary and capricious" standard of review should apply. Comparing the language of the Plan's language to other plans which have been found to contain explicit discretion-granting language, this Court concludes such authority is lacking here.

■ UNUM first argues that as the Plan establishes UNUM as a fiduciary, and the Plan charges the fiduciary with claim evaluation and determination responsibility, UNUM therefore has full and binding discretionary authority. The ERISA statute itself provides that benefit plan fiduciaries will be granted authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(1). The Court in *Bruch,* nonetheless, saw the need to distinguish between a plan which grants full discretion and one which does not. Therefore, an express grant of discretion clearly does not occur simply by virtue of a grant of power to the fiduciary to administer and operate the plan. To hold that any provision of a plan which requires the administrator to make a determination thus creates an express grant of discretionary authority essentially would be tantamount to saying that all plans should be reviewed according to the arbitrary and capricious standard of review. This simply is not so.

■ UNUM also argues that the Plan vests authority in UNUM to assess the sufficiency of the claimant's submission of proof of claim as the Plan contains minimum requirements for such a submission. The argument that such a proof of claim provision vests discretionary authority in the fiduciary is not novel. In *Bounds v. Bell Atlantic*

---

*Grady,* at 110, *citing Coleman,* 919 F.Supp. at 580, (quoting *Block v. Pitney Bowes,* 952 F.2d

1450, 1452–53 (D.C.Cir.1992)).

*Enterprises Flexible Long–Term Disability Plan,* 32 F.3d 337 (8th Cir.1994), the Court held that a similar proof of claim provision did not amount to a grant of discretion sufficient to warrant the use of the arbitrary and capricious standard, because the provision itself did not contain "explicit discretion granting language." *Id.* at 339. Similarly, in *Cleary,* the Court determined that since the proof of claim provision merely required that evidence of the loss be presented, there was no discretion expressly conferred. 924 F.Supp. at 312–13.

The Plan's requirements regarding a proof of claim are as follows:

> [Claimant] must give us proof of claim no later than 90 days after the end of the elimination period.
>
> If it is not possible for [claimant] to give us proof within these time limits, it must be given as soon as reasonably possible. But [claimant] may not give proof later than one year after the time it is otherwise required.
>
> [Claimant] must give us proof of continued disability and regular attendance of a physician within 30 days of the date we request the proof.
>
> The proof must cover:
> 1) the date disability started;
> 2) the cause of disability; and
> 3) how serious the disability is.

Furthermore, the Plan requires that:

> We, at our expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of claim:
> 1. examined by a physician, other health professional, or vocational expert of our choice; and/or
> 2. interviewed by an authorized Company representative. This right may be used as often as reasonably required.

Such language does not expressly confer final and binding discretionary authority upon the administrator; it is merely a recital of the guidelines which must be followed before the claim can be processed. Although UNUM has decision-making power under the Plan that does not mean that it has full discretionary authority expressly granted to it by the Plan. Clearly, an examination of the language used in the Plan confirms that conclusion. This Court agrees with the reasoning and holdings of *Cleary* and *Bounds* and concludes that the proof of claim provision here does not explicitly grant final discretionary authority to UNUM.

█ Finally, UNUM argues that final decision-making authority is granted because the Plan states that after a review of the claim, "the final decision on review shall be furnished in writing ..." to the claimant. Again, although UNUM may make a "final" decision in the sense that it is UNUM's last decision on the matter, that does not mean, and the Plan does not clearly state that it will mean, that UNUM's decision is *the* final decision on the matter, precluding review by any other administrative or legal body. If the Plan intended to give UNUM final decision making power, it would and should have stated so clearly, rather than leave that to interpretation. This is another example of UNUM's attempt to pass off garden-variety terms as provisions that are intended to specifically convey full and final discretionary authority. There are significant legal consequences that flow from granting such authority and this Court will not interpret ambiguous terms as a clear expression of the grant of such authority.

Therefore, for the reasons stated above, this Court concludes that the Plan in question does not clearly or expressly convey final discretionary authority to UNUM. Thus, the Court will review the decision to terminate plaintiff's benefits according to the *de novo* standard of review.

**IV. Discussion**

Plaintiff asserts that the August 15, 1995 revocation of her benefits was improper because it was based on an erroneous factual predicate and also because the notice of termination was insufficient under the terms of ERISA. Plaintiff also argues that the April 22, 1996 termination letter was improper because UNUM failed to cite to the provisions of the Plan under which the claim was brought and also because UNUM subsequently failed to provide plaintiff with a time-

ly review of the decision, as required by ERISA.

## A. The August 15, 1995 Termination

■ Plaintiff claims that her benefits should be reinstated from the time UNUM terminated her previously approved benefits on August 15, 1995. She argues that the termination was improper because the reasons given for termination were factually unsupported and, in addition, the notice plaintiff received informing her of the termination was not in compliance with ERISA. If the notice was illegal because of noncompliance with 29 U.S.C. § 1132(a)(1)(B), the Court can award plaintiff the benefits improperly withheld, regardless of whether the reasons for termination were factually accurate.

### 1. ERISA Compliance

The ERISA statute and the regulations applicable thereto require that adequate notice, in compliance with the regulations, be given to each claimant upon denial or termination of benefits and that the claimant be given a reasonable opportunity for full and fair review by the fiduciary denying the claim. 29 U.S.C. § 1133.[3] The statute and the regulations are intended to insure a meaningful review of the decision by guaranteeing that the claimant is fully aware of the reasons for the termination of benefits and what, if anything, can be done to correct the deficiency in the claim. *See Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685 (7th Cir.1992).

■ Many courts have found that termination letters which fail to indicate with specificity the information needed to contest the termination are insufficient to satisfy § 1133. *See Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375 (7th Cir.1994) (notice failed to comply with ERISA as it did not explain why material in claimant's medical file did not substantiate her claim and failed to give description of type of additional information that would be required to perfect claim and why such information would be needed); *Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388 (7th Cir.1983) (§ 1133 not complied with when reason given for denial was a conclusion and the insurer failed to indicate type of information which claimant should have supplied.); *Jorstad v. Connecticut Gen. Life Ins. Co.*, 844 F.Supp. 46 (D.Mass.1994) (sparse or conclusory reasons for denial of benefits is insufficient and fails to comport with ERISA's requirements).

■ The letter plaintiff received from UNUM on August 15, 1995 was intended to provide her with notice of termination of benefits and stated the following:

We have been unable to investigate your claim for partial disability benefits because of a letter sent to us on 3/13/95 revoking all authorizations from you to enable us to obtain medical information and to speak with your physicians. Because of your decision to withhold this information from us we cannot make a decision based on the information in your file about your work capacity. There is conflicting information

---

**3.** 29 U.S.C. § 1133 provides, in relevant part, that

... every employee benefit plan shall ...
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by participant and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the named fiduciary of the decision denying the claim. The regulations, 29 C.F.R. § 2560.503–1(f) provide that the written notice shall contain the following information:
(1) the specific reason or reasons for the denial;
(2) specific reference to the pertinent plan provisions on which the denial is based;

(3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
(4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review. 29 C.F.R. § 2560.503–1(h)(1) provides the following:
(i) A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.

in your file and we can't investigate this to the extent we need to.

We agreed to wait for this medical release until you had your workers compensation hearing on 5/31/95. This hearing was pushed ahead to 9/13/95 and this authorization is still revoked. We agreed to discontinue our investigation for two months but stretching this to six months is unreasonable. We have expressed this to Atty. Kevin Bowen and still haven't received the authorization we need to continue to investigate this disability claim. Therefore the letter sent to you on 7/12/95 stating that if we don't receive this authorization from you by 8/14/95 then we will close your file is in effect right away.

... If you do not agree with our decision, you may have it reviewed. Should you desire a review, you must send a written request, within 60 days of receipt of this notice, to ...

The notice indicates that the specific reason for the termination of Tavares' benefits was her failure to provide UNUM with the necessary authorization form, thus making it impossible for UNUM to fully investigate her claim since there was conflicting information in her file. UNUM states that benefits are being terminated in accordance with the letter dated July 12, 1995. The July 12 letter indicated that benefits would terminate if the authorization form was not signed by plaintiff and sent to UNUM by August 14, 1995. There is, however, a letter from UNUM to Tavares dated July 17, 1995, which acknowledges receipt of the requested authorization form and states that the only additional information required relates to the workers' compensation hearing. The August 15, 1995 termination letter clearly implies that the benefits are being canceled because the authorization was never received. Plaintiff was justifiably confused by this letter for she had in her possession a signed acknowledgment of receipt of the authorization. UNUM now attempts to argue that the termination letter clearly indicates that the signed authorization was not enough because UNUM was not able to speak directly with plaintiff's doctors. This is not evident from the letter or the context out of which the letter arose. If UNUM meant to say that the benefits were being terminated because UNUM was not able to speak with plaintiff's doctors, it could have easily so specified in its letter. It clearly failed to do so.

Additionally, UNUM's letter claims that there was conflicting information in plaintiff's file, yet it gives no specifics as to the nature of the conflicting information or what plaintiff would need to produce to resolve the confusion. The record reflects numerous attempts by plaintiff, through her attorney, to find out from UNUM the specifics of the "conflicting information" and that information was never received.

Reading UNUM's termination of benefits letter against the factual background of this case would leave even the most logical of thinkers confused. There is a heavy burden on the administrator to provide a clear and understandable explanation for its actions along with a clear specification of the information needed to correct the problems or inconsistencies, if any. UNUM's August 15, 1995 notice of termination cannot be deemed to satisfy these requirements and, thus, constitutes an inadequate notice under § 1133. For this reason alone it is legally invalid and did not effect a termination of benefits.

## 2. Factual Validity of the Reasons Given for Termination

In addition, UNUM's factual reason for termination is unsupportable. In its brief, UNUM states that "UNUM terminated benefits because [plaintiff] had revoked UNUM's authorization to discuss her medical and psychological progress with her medical service providers." After a review of the facts and the applicable law, this Court concludes that even if the notice had complied with ERISA's requirements, the termination of benefits was improper under the Plan.

As UNUM acknowledged, plaintiff signed the authorization form sent by UNUM. Nothing in that authorization provides specifically that UNUM will have the right to speak directly with any medical provider or doctor; it only refers to UNUM's ability to access records or information regarding the claimant and authorizes the provider to release such information to UNUM. UNUM

was granted full access to plaintiff's medical information and records. Due to the issues which arose between UNUM and plaintiff and the specifics of the situation, including an ongoing workers' compensation proceeding, plaintiff refused to allow UNUM to speak directly with her doctors until some of those issues were resolved. This, as UNUM was aware, was not a permanent prohibition. By allowing UNUM full access to any records or information it might need, but prohibiting direct contact with the doctors during the pendency of a related legal proceeding, plaintiff was not violating any Plan provisions or impeding UNUM's ability to investigate her claim. Nonetheless, UNUM terminated her benefits and now claims that UNUM's inability to speak directly with her doctors prohibited UNUM from completing the claim investigation. Yet when asked, where this alleged right to speak with the doctors originated, UNUM vaguely referenced "case law." UNUM has never cited a specific case or a provision in the Plan or the terms of the authorization form to support this claimed right, either to plaintiff's attorney or this Court. This Court can find no case law which specifically supports UNUM's unique proposition. The Plan itself does not grant such authority to UNUM; its only requirement is that UNUM be permitted to have plaintiff submit to medical evaluation by its physicians. There is no factual or legal predicate to support UNUM's claim that it was entitled to terminate benefits because plaintiff failed to allow UNUM to speak or interview her doctors personally during the pendency of the workers' compensation case. Thus, UNUM's basis for termination of benefits was without factual and legal support.

## B. The April 22, 1996 Termination

In October of 1995, Dr. Nash's deposition in the workers' compensation matter was completed, and plaintiff allowed UNUM to speak with him at that time. UNUM then proceeded to uphold the initial termination on the grounds that it had been unable to speak with the doctor directly, but then returned the claim file to the Benefits office for further processing. After gathering additional information, on April 22, 1996, UNUM again informed plaintiff that the decision to terminate benefits was proper and would be continued in effect. UNUM asserted new and different grounds to justify the termination of benefits at this point. However, the notice given then, clearly, violated the provisions of § 1133 and the applicable regulations.

The April 22, 1996 letter states that UNUM is basing its decision upon the "Disability" provision of the Plan, yet plaintiff had requested or made a claim for benefits under the "Partial Disability" section. Section 1133 and 29 C.F.R. § 2560.503–1(f)(2) provide that the notice must include the specific provision upon which the plan administrator is basing its decision to terminate benefits. There is no mention in the letter of April 22, 1996 of plaintiff's claim for benefits under the "Partial Disability" provision of the Plan. This is a crucial error. This mistake also caused UNUM to fail to satisfy ERISA's requirement that information needed to perfect the claim be made known to the claimant. It is impossible for plaintiff to perceive in this situation what information would be needed to perfect the claim when the incorrect Plan provision is cited as the basis for termination. 29 C.F.R. § 2560.503–1(f)(3). Therefore, the notice requirements of § 1133 and the regulations clearly were not satisfied by this letter.

After receiving the letter, plaintiff requested a review of the decision in accordance with the regulations set out in 29 C.F.R. 2560.503–1(g). The ERISA regulations require that such a review be conducted by the plan administrator within 60 days of receipt of request for hearing. 29 C.F.R. § 2560.503–1(h)(1). Under special circumstances, when such circumstances are made known to the participant, the administrator may have 120 days to complete a review. *Id.* As of today, over two years after plaintiff requested the review, no such review or hearing has occurred. Again, UNUM has failed to comply with the mandates of ERISA.

For all the reasons discussed above, it is evident that UNUM's termination of plaintiff's benefits was illegal and, thus, ineffective. Consequently, defendant's motion for

summary judgment is denied and plaintiff's motion for partial summary judgment is granted in part.

## C. Remedies

 When a violation of the notice requirements of ERISA has occurred, it is within the discretion of the Court to determine whether to remand the case to the decision-making body, offering it an opportunity to correct the procedural deficiencies, or order a reinstatement of benefits. *See Halpin*, 962 F.2d 685. In a case such as this, where UNUM's actions have deprived plaintiff of benefits for an extended period of time, delayed the case unnecessarily and violated more than one of ERISA's requirements on more than one occasion, it would be unfair to plaintiff to give UNUM another chance to correct its procedural deficiencies and force her to resubmit to its review board for further evaluation. This Court, thus, declares that the termination was improper and illegal.

Therefore, the issue of wrongful termination has been resolved. What remains for determination is whether plaintiff has ceased to be partially disabled within the meaning of the Plan since the ineffective attempt at termination. The bench trial of this matter will focus on that issue.

It is evident that plaintiff will be entitled to a money judgment for the loss of her benefits for the appropriate period. In addition, as this Court noted in *Grady*, ERISA provides for postjudgment interest calculated at the federal rate, but prejudgement interest is left to the discretion of the Court. *Grady*, 1998 WL 293731 at *19. The question of whether to award prejudgment interest, and if so, at what rate and over what period of time, must be addressed at trial. Plaintiff has also requested attorneys fees, which are provided for in 29 U.S.C. § 1132(g). That matter should also be resolved at trial. As this Court concluded in *Grady*, the scope of *de novo* review is such that the Court may consider evidence relating to the claim which was not before the plan administrator at the time of its decision to terminate benefits. 1998 WL 293731 at *13. Therefore, the evidence the Court may consider during the trial will not be limited to that which was before UNUM at the time it made the decisions to terminate plaintiff's benefits.

The parties will have 60 days from the date hereof to complete discovery in this case and 30 days thereafter to file their pre-trial memoranda addressing these issues, then a bench trial will be scheduled.

## IV. Conclusion

For the reasons stated above, this Court concludes that UNUM violated 29 U.S.C. § 1133 and the applicable regulations in terminating plaintiff's partial disability benefits. Defendant's motion for summary judgment hereby is denied and plaintiff's motion for partial summary judgment is granted to the extent that the Court declares that UNUM's purported termination of benefits was illegal and of no effect. Pursuant to 29 U.S.C. § 1132(a)(1)(B), UNUM is liable to plaintiff for partial disability benefits under the Plan from the initial date of termination, August 15, 1995, until plaintiff is found to be no longer partially disabled. The amount of benefits owed, along with the amount, if any, of prejudgment interest and/or attorney's fees and costs to be included in the judgment will be determined at trial. No judgment will enter until the Court resolves all these issues at trial.

It is so ordered.