**M. Richard TROMBLEY**

v.

**NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.**

Nos. Civ.A. 97–479–JD, Civ.A. 99–247L.

United States District Court,
D. New Hampshire.

March 22, 2000.

Jon Meyer, Bakus, Meyer & Solomon, Manchester, NH, for plaintiff.

Jeremy T. Walker, McLane, Graf, Raulerson & Middleton, Manchester, NH, for defendant.

## OPINION AND ORDER

LAGUEUX, District Judge.[*]

This matter is before the Court on the motion of New England Telephone and Telegraph Company ("NET" or "defendant") for summary judgment. This action was brought by M. Richard Trombley ("plaintiff") claiming that NET has wrongfully denied him benefits to which he is entitled under the terms of the NYNEX Management Pension Plan ("NYNEX Plan"). In his Amended Complaint, plaintiff has asserted two claims under the Employees' Retirement Income Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA") and three claims under state common law. Defendant has moved for summary judgment on all five Counts of the Amended Complaint.

There are three main issues for this Court to decide. First, whether the decision of the NYNEX Plan Benefits Committee to deny plaintiff's claim was correct and what standard of review is appropriate in making that determination. Second, whether plaintiff is able to bring an equitable claim under ERISA in conjunction with his other ERISA claim for wrongful denial of benefits. Finally, this appeal requires the Court to decide if ERISA preempts plaintiff's state law claims. For the reasons set forth in this opinion, defendant's motion for summary judgment is granted on all Counts.

### Background

The following recitation of the facts is not disputed by the parties. The claims against NET, doing business as NYNEX Corporation, stem largely from one of the unintended consequences of the government's break-up of AT & T and the Bell System Companies on January 1, 1984. As would be expected, prior to the forced divestiture by AT & T of the Bell System Companies, pension benefits for Bell System employees, such as plaintiff, were provided by the National Bell System Management Plan ("Bell Plan"). Prior to January 1, 1984, when an employee of one Bell System Company, such as NET, was transferred or re-employed by another Bell System Company, the Bell Plan provided for the transfer of prior service credits and pension entitlements from the former Bell System employer to their new Bell System employer. This transfer of prior service credits and pension rights was governed by "Interchange Agreements" contained in the Bell Plan. This method of transferring service credits and pension rights was disrupted after the break-up of the Bell System Companies.

Following the divestiture, the "Interchange Agreements" were no longer applicable. In place of those agreements, a "Divestiture Interchange Agreement" was entered into by AT & T and the newly, independent Bell System Companies. The Divestiture Interchange Agreement provided for the continued reciprocal recognition of post-divestiture service credits between and among AT & T, the divested Bell System Companies and the other parties to the agreement. In the final divestiture order approved on August 5, 1984, the transfer of post-divestiture service credits was explicitly limited to the 1984 calendar year.

In order to address the expiration of this transfer procedure by and among AT & T and the divested Bell System Companies beyond the 1984 calendar year, Congress enacted the Mandatory Portability Act ("Portability Act"), § 559 of the Deficit Reduction Act of 1984. See Mandatory Portability Act, Pub.L. 98–369 (99 Stat. 494) (1984). The Portability Act provides for both the recognition and transfer of service credits by and among AT & T and the divested Bell System Companies and also the portability of pension rights for

[*] Of the District of Rhode Island, sitting by designation.

former Bell System employees, if they meet certain requirements.

In order to implement the Portability Act, the Bell System Companies impacted by the divestiture, including NET and Southern Bell, entered into the Mandatory Portability Agreement ("Portability Agreement") dated as of January 1, 1985. *See* Defendant's Ex. 3. The Portability Agreement incorporated sections of the Portability Act in order to provide for the interchange of benefit obligations and mutual recognition of service credits after January 1, 1985 among the parties to the agreement. In effect, the Portability Agreement superceded the Divestiture Interchange Agreement. The NYNEX Plan incorporates the provisions of the Portability Agreement in Articles II and XI.

Plaintiff was originally employed by NET from January 26, 1970 until July 31, 1981. On August 1, 1981, plaintiff transferred from NET to Southern Bell. As of July 1, 1981, plaintiff had accrued approximately eleven and one half years of service under the Bell Plan. When plaintiff transferred his employment to Southern Bell on August 1, 1981, his years of service were likewise transferred to Southern Bell pursuant to the Interchange Agreement applicable at that time. Plaintiff's employment with Southern Bell terminated on September 18, 1981. He was not employed by any Bell System Company for almost six years.

On June 5, 1987, plaintiff completed and signed an application for re-employment with NET. Plaintiff agreed that if he were to become an NET employee, his pension benefits would be based on the terms of that company's pension plan (the NYNEX Plan), which at that time included the Portability Agreement. Plaintiff was re-employed by NET from August 3, 1987 until October 31, 1995.

On or about July 6, 1992, Audrey Russell, a clerical assistant in the NET Benefits Office, completed an Employee Service Determination form crediting plaintiff with the eleven and one half years of prior service that had previously been transferred to Southern Bell under the Interchange Agreement. At this time, plaintiff's net credited service date was calculated as of December 11, 1975.

Over two years later, on or about September 22, 1994, Deborah Tyler, an analyst in the NET Benefits Office discovered the error made by Ms. Russell and corrected it to reflect plaintiff's net credited service date as of August 3, 1987, the date he was re-employed by NET. Ms. Tyler notified plaintiff by letter dated September 26, 1994 of the error and correction. Plaintiff thereafter wrote to Donald Sacco, Vice President of Human Resources, requesting that he be given the additional service credits. Mr. Sacco responded by letter dated December 9, 1994, informing plaintiff that he had reviewed the matter and was upholding the determination of the NET Benefits Office.

In response, plaintiff appealed the action to the NET Employees' Benefits Committee, which is the initial administrative appeal committee under the NYNEX Plan. On December 19, 1995, the NET Benefits Committee denied his request that the prior service at NET be "bridged" so as to apply to his re-employment service. Plaintiff thereafter appealed to the NYNEX Employees' Benefits Committee, which is the final administrative appeal committee under the Plan. On July 1, 1996 the NYNEX Benefits Committee likewise denied his claim.

On or about October 31, 1995, plaintiff elected a retirement incentive offered by NET, known as the 6 Plus 6 Incentive, and retired from the Company. Under that incentive, any employee who made the election was credited with an additional six years of service and six years of age for purposes of calculating pension benefits under the NYNEX Plan.

After exhausting his administrative remedies, plaintiff filed this action in the United States District Court for the District of New Hampshire. On May 12, 1999, this

case was referred to this writer because of the recusal of the New Hampshire District judges.

In Count I of the Amended Complaint, plaintiff alleges that defendant's failure to "bridge" his previous service credits at NET denied him benefits under the pension plan in violation of § 1132(a)(1)(B) of ERISA. In Count II plaintiff alleges breach of contract under state law. Count III, another state law claim is based on promissory estoppel. In Count IV plaintiff avers that defendant breached its fiduciary duty to him as mandated by ERISA and he seeks the equitable remedy provided in 29 U.S.C. § 1132(a)(3). Finally, Count V is a state law claim for negligent misrepresentation.

Defendant argues that summary judgment should be granted on all Counts. In support of its motion for summary judgment on Count I, defendant argues that under the terms of the Portability Act and Portability Agreement, both of which serve as a basis for the NYNEX Plan, plaintiff is not entitled to "bridge" his eleven and one half years of prior service at NET because he will receive credit for that service from Southern Bell as a result of the transfer of the credits to Southern Bell in 1981. In addition, defendant argues that this Court should review the final determination of the NYNEX Benefits Committee under the more deferential arbitrary and capricious standard, and not conduct a de novo review. Defendant also argues that summary judgment should be granted on plaintiff's ERISA claim for breach of fiduciary duty contained in Count IV, because such a claim can only be asserted if a plaintiff has no other claim under ERISA. Finally, defendant argues that the state law claims contained in Counts II, III and V are preempted by ERISA.

In his objection to the motion for summary judgment on Count I, plaintiff contends that no provision in the Portability Act, Portability Agreement or the NYNEX Plan prevents him from receiving credit for the previous NET employment from both NET and Southern Bell. Plaintiff further contends that the decision of the NYNEX Benefits Committee should be reviewed by this Court under the de novo standard. Finally, plaintiff argues that the state law claims are not preempted by ERISA.

## Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must view the facts on the record and all inferences therefrom in the light most favorable to the nonmoving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991).

A grant of summary judgment "is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Electric Co.,* 777 F.Supp. 167, 169 (D.R.I.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood[.]" *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Summary judgment is only available when there is no dispute as to any material fact

and only questions of law remain. *See Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996).

**Standard of Review of Benefits Committee's Determination**

When, as is the case here, plan administrators make decisions in ERISA cases, a reviewing Court is confronted with determining how much deference will be given to any particular decision. A problem arises in reviewing such administrative determinations where the benefit plan at issue does not clearly grant the plan administrators the authority to make binding determinations on plan participant benefits. Without venerable rules established from decades of caselaw, and in the absence of binding authority, such determinations by plan administrators may be without a firmly based foundation.

At the outset, this Court must decide whether to conduct a de novo review of the denial made by the NYNEX Benefits Committee of plaintiff's contention that his previous service credits should be "bridged," or review that decision using the more deferential "arbitrary and capricious" standard outlined in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone,* the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948; *see also Varity Corp. v. Howe,* 516 U.S. 489, 513, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("At present, courts review [plan coverage] decisions with a degree of deference to the administrator, provided that the benefit plan gives the administrator or fiduciary

discretionary authority[.]") (internal citations omitted).

The First Circuit applied the *Firestone* holding in *Recupero v. New England Telephone and Telegraph Company,* 118 F.3d 820 (1st Cir.1997). In *Recupero,* the Court had to decide whether the plan administrators, in denying plaintiff accident benefits, properly interpreted a plan provision which required the accident to have occurred during the performance of plaintiff's duties and be directly connected thereto. There, the First Circuit held that the deferential arbitrary and capricious standard of review applied to determinations made by the plan administrators because they were granted discretionary authority pursuant to the plan. *See Recupero,* 118 F.3d at 838–39; *see also Doyle v. Paul Revere Ins. Co.,* 144 F.3d 181, 183–84 (1st Cir.1998) (same).

■ Fortunately, this writer has had occasion to discuss the application of the *Firestone* rule in great detail in *Grady v. Paul Revere Life Ins. Co.,* 10 F.Supp.2d 100 (D.R.I.1998).[1] There, this Court concurred with the majority of Circuit Courts of Appeal that confronted the issue of whether *Firestone* deference is applied when the plan confers discretionary authority upon the administrator and where the benefit denial was based on factual determinations. *See Grady,* 10 F.Supp.2d at 106–10 (collecting cases). In *Grady* the Court stated the rule for ERISA review as this: "where an ERISA plan confers discretionary authority upon the administrator to determine eligibility for benefits or to construe the terms of the plan, then the district court is to apply the arbitrary and capricious standard of review to the administrator's factual determinations." *Id.* at 110.

1. This Court also recently discussed the ERISA standard of review in *Mattias v. Computer Sciences Corporation,* 34 F.Supp.2d 120 (D.R.I.1999) and *Tavares v. UNUM Corp.,* 17 F.Supp.2d 69 (D.R.I.1998). In both of those cases, this writer re-traced the analysis in

*Firestone* and *Grady* and determined that de novo review of the plan administrator's decision was proper because there was insufficient discretionary authority granted to said administrator.

**164**

Much of the discussion in *Grady* is not applicable to this case since *Firestone* "establishes a clear approach to § 1132(a)(1)(B) challenges to benefit denials based on the interpretation of plan terms." *Grady*, 10 F.Supp.2d at 105. There is no factual dispute in this case. The issue before this Court is simply whether plaintiff can have his prior years with NET credited under the terms of the NYNEX Plan. The more deferential arbitrary and capricious standard of review is applicable here only if the NYNEX Plan properly grants discretionary authority to the plan administrator.

■ The First Circuit has stated that the authority to determine eligibility for benefits and to construe the terms of the plan must be found in clear plan language. *See Terry v. Bayer Corp.*, 145 F.3d 28, 37 (1st Cir.1998) ("Where the clear discretionary grant is found, '*Firestone* and its progeny mandate a deferential arbitrary and capricious standard of judicial review.' ") (quoting *Recupero*, 118 F.3d at 827); *see also Allen v. Adage, Inc.*, 967 F.2d 695, 697–98 (1st Cir.1992) (de novo review appropriate where "nothing in the Plan indicates that another approach is to be used"); *Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 29 (1st Cir.1991) (where defendant "points to no language in the Plan giving it the 'discretionary authority' required ..." de novo review is appropriate).

> [I]n order for the more deferential arbitrary and capricious standard to apply ... "discretionary authority" as defined by *Firestone* must be expressly conferred by the plan in question. A finding of this express authority does not hinge on a policy's use of any magic words such as 'discretion.' The policy must, however, set forth terms sufficient such that it can reasonably be found that such power and discretion has been conferred.

*Coleman v. Metropolitan Life Ins. Co.*, 919 F.Supp. 573, 580 (D.R.I.1996) (Boyle, J.) (citations omitted). For example, the arbitrary and capricious standard applies when the plan gives the administrator the power " 'to interpret and construe the Plan, [and] to determine all questions of eligibility and the status and rights of Participants' ", and provides that "all decisions of the administrator 'shall, to the extent not inconsistent with provisions of the Plan, be final and conclusive and binding upon all persons having an interest in the Plan.' " *Id.* (quoting *Block v. Pitney Bowes*, 952 F.2d 1450, 1452–53 (D.C.Cir.1992)).

■ In this case, the NYNEX Plan clearly confers discretionary authority on the plan administrator consistent with the mandate in *Firestone*. The NYNEX Plan states in pertinent part that:

> Except as provided to the contrary elsewhere in the Plan, NYNEX (or the Applicable Committee to which NYNEX shall have delegated such authority) shall have the sole and absolute discretion—
>
> (a) to construe the terms of the Plan, and
>
> (b) to determine eligibility for benefits and the amount of benefits provided under the Plan, and such determination by NYNEX or such Applicable Committee shall be conclusive.

*See* NYNEX Benefits Plan § 14.12. That is about as clear as it gets. Therefore, the arbitrary and capricious standard applies and this Court will give due deference to the Benefits Committee's determination that, under the NYNEX Plan, plaintiff is not entitled to have his prior service credits double counted.

## Discussion

### A. Review of Benefits Committee's Denial of Benefits

■ Count I is a § 1132(a)(1)(B) challenge to the Benefits Committee's denial of plaintiff's claim that he was entitled to "bridge" his previous eleven and one half years of employment with NET. After reviewing the relevant provisions of the NYNEX Plan, it is evident that the Bene-

fits Committee was absolutely correct in deciding that plaintiff is not entitled to have his previous employment with NET "bridged." That is the right ruling because plaintiff transferred his previous eleven and one half years of service with NET to Southern Bell pursuant to the Interchange Agreement in place in 1981, and those credits were not transferred back when he was re-employed by NET in 1987. Thus, he did not qualify under the definition of "covered employee" for those service credits under the NYNEX Plan, Portability Act and Portability Agreement, which were in effect when he was re-employed by NET. For the sake of clarity and completeness some history and explanation is required.

Prior to the break-up of AT & T in January, 1984, employees could transfer their employment among the different Bell System Operating Companies and retain or "bridge" their accrued pension and benefit rights pursuant to the Interchange Agreements in force between the companies. For example, someone who had worked for NET for a number of years, could move and become employed by Southern Bell and "bridge," or transfer, his or her accrued service and pension rights.

Upon the separation of AT & T from the independent regional Bell System Companies, including NET and Southern Bell, the portability of accrued service credits and pension rights was to be phased out and employees were allowed to transfer their credits and rights for one year only, until December 31, 1984. United States District Judge Harold H. Greene (of the D.C. District), who presided over the AT & T case, rejected the arguments made by AT & T's labor unions and did not allow "bridging" to continue beyond that time. *See United States v. Western Electric Co.,* 569 F.Supp. 1057, 1094 (D.D.C.), *aff'd sub nom., California v. United States,* 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983). Therefore, the Divestiture Interchange Agreement among the Bell System Companies allowed "bridging" for only one year in order to facilitate transfers between the newly independent companies. *Id.* at 1091–1094, n. 158.

The AT & T employees took their case to Congress. On July 17, 1984, Congress enacted Section 559 of the Deficit Reduction Act of 1984 (the "Portability Act"), which extended "bridging" rights to certain "covered employees." *See* Portability Act § 559(c). Section 559(c)(5) of the Portability Act clearly includes Bell System Companies such as NET and Southern Bell as covered entities. NET and other Bell System Companies entered into Mandatory Portability Agreements to implement the rules for the transferability of credits and benefits under the Portability Act. *See* Defendant's Ex. 3. The Portability Act extended the window of "bridging" indefinitely for employees covered under the Act who were transferred after 1984.

In this case, the operative section of the Portability Act is § 559(a), which defines the "covered employees" that can continue the portability of their credits and rights provides:

> (a) Employee Protection—Notwithstanding any provisions of the Divestiture Interchange Agreement [DIA] to the contrary, in the case of any change in employment on or after January 1, 1985, by a covered employee, the recognition of service credit, and enforcement of such recognition, shall be governed in the same manner and to the same extent as provided under the [DIA] for a change in employment by a covered employee during calendar year 1985.

Portability Act, Pub.L. 98–369, § 559(a) (1984). A "covered employee" is defined as an employee who—

> (A) on December 31, 1983, was an employee of any such entity serving in an eligible position, or

> (B) was a former employee with rehire or recall rights on such date and is rehired during the period of the employee's rehire or recall rights.

*Id.* at § 559(b)(1)–(3). Thus, the purpose of the Portability Act was to protect employees who continued to work for one of the covered entities (i.e., former AT & T affiliated companies) during and after the break-up because the Interchange Agreements, which allowed for "bridging" prior to the break-up, were no longer in effect. As stated earlier, the provision of the Portability Act that defines a "covered employee" was subsequently included in the Portability Agreement executed by NET and other Bell System Companies, and is restated in pertinent part in the NYNEX Plan provision that defines "Term of Employment" for employees who previously worked for a "Former Affiliate," such as Southern Bell. *See* Portability Agreement, Defendant's Ex. 3 and NYNEX Pension Plan, Defendant's Ex. 1, § 2.47(h). The NYNEX Plan also states clearly that if a plan participant, such as plaintiff, is hired by an "Interchange Company," such as Southern Bell, the service credits "are transferred [and], no pension benefits shall be payable under this [NYNEX] Plan." *See* NYNEX Pension Plan, Defendants's Ex. 1, § 11.2(a)(3).

As of commencement of his re-employment with NET in 1987, plaintiff had no prior service that could be "bridged" because his eleven and one half years of NET service had previously been transferred to Southern Bell under the Bell Plan and applicable Interchange Agreement in force before the break-up of AT & T. Consequently, plaintiff is entitled to a deferred vested pension under the Southern Bell Pension Plan. This pension is largely based on his previous employment at NET that was transferred to Southern Bell pursuant to the Interchange Agreement in 1981. Therefore, the pension credits from that previous employment are held by Southern Bell, not NET. *See id.*

Under the terms of the NYNEX Plan, the only way for plaintiff to have had those eleven and one half years effectively re-transferred to NET from Southern Bell was if he had qualified under the definition of a "covered employee" as defined in § 2.47(h) of the NYNEX Plan, (the same definition mandated by the Portability Act and Portability Agreement) when he was rehired by NET in 1987. Plaintiff was not a "covered employee" as defined by the NYNEX Plan, the Portability Act and the Portability Agreement because as of December 31, 1983 he was not an active employee of either NET or Southern Bell. *See* NYNEX Pension Plan, § 2.47(h)(1)–(2).

Under the terms of the NYNEX Plan it is absolutely clear that plaintiff's eleven and one half years could not be transferred or "bridged" to NET from Southern Bell when he was re-employed by NET in 1987. Plaintiff's previous service credits earned between 1970 and 1981 with NET remain to this day with Southern Bell and he is entitled to a pension based on those service credits from Southern Bell. Nothing in the NYNEX Plan allows plaintiff to have those service credits counted twice. Therefore, the decision of the Benefits Committee denying plaintiff's request was consistent with the NYNEX Plan and thus not arbitrary and capricious. For the foregoing reasons, defendant's motion for summary judgment on Count I must be granted.

## B. Breach of Fiduciary Duty

In Count IV of the Amended Complaint plaintiff alleges that the denial of his claim for the service credits for his previous employment with NET constituted a breach of fiduciary duty imposed by ERISA on the plan administrator and thus he is entitled to the equitable remedies available in § 1132(a)(3).

■ The Supreme Court has made clear that the equitable remedies provided in § 1132(a)(3) may not be invoked when some other subsection contained in § 1132 provides adequate relief for the alleged violations. In *Varity*, the Supreme Court stated that "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for

further equitable relief, in which case such relief normally would not be 'appropriate.' " 516 U.S. at 515, 116 S.Ct. 1065 (emphasis added); *see also Corsini v. United Healthcare Corp.*, 51 F.Supp.2d 103, 105–06 (D.R.I.1999) (Torres, J.) (rejecting plaintiff's attempt to bring a claim under § 1132(a)(3) because subsection (a)(1)(B) adequately covered plaintiff's claim). The Supreme Court's rationale for this limitation is that four of the six enforcement subsections in § 1132 remedy specific violations, while subsection (a)(3) only acts as a "catch-all" or "safety net, offering appropriate relief for injuries" that are beyond the coverage of § 1132. *Varity*, 516 U.S. at 512, 116 S.Ct. 1065.

■ In *Varity*, the Court permitted an action to be brought under 1132(a)(3) because it was the only available remedy for employees who were non-participants in the plan and, thus, unable to sue under subsection (a)(1)(B). *See id.* That is not the case here. Although he ultimately failed, plaintiff had a claim that defendant improperly denied him service credits under the NYNEX Plan and thus could bring a suit under § 1132(a)(1)(B).[2] Therefore, defendant is entitled to summary judgment on Count IV.

### C. Preemption of State Law Claims

Lastly, this Court must decide whether ERISA preempts plaintiff's state law causes of action contained in Counts II, III and V of the Amended Complaint. ERISA's preemption clause, 514(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...

29 U.S.C. § 1144(a). "The term 'State law' includes all laws, decisions, rules, regulations, or other state action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

■ The Supreme Court has given ERISA's preemption clause an expansive interpretation by establishing that "a law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). "Under this 'broad common sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Thus, a state law cause of action is preempted by ERISA where "the court's inquiry must be directed to the plan", or if the state cause of action directly conflicts with ERISA. *Ingersoll–Rand*, 498 U.S. at 140–142, 111 S.Ct. 478; *see also Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 795 (1st Cir.1995) (holding that ERISA preempts the state law of misrepresentation because it was "inseparably connected" to the plan); *Vartanian v. Monsanto*, 14 F.3d 697, 700 (1st Cir.1994) (same).

Plaintiff bases his argument against preemption upon the Supreme Court's apparent restriction of ERISA preemption of state law claims in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In *Travelers*, the Supreme Court recognized the problem created by the broad "relate to" standard and asked that courts instead look to the objective of the ERISA statute, i.e., a uniform body of benefits law, as a guide for determining which state laws should survive preemption. *Id.* The Supreme Court delineated a touchstone of three categories of state laws that relate to ERISA in such a way that preemption of

---

**2.** There was clearly no breach of fiduciary duty by the Benefits Committee in any event.

those laws would further its purpose in providing uniformity: (1) state laws that "mandate[ ] employee benefit structures or their administration", (2) state laws that "bind plan administrators to [a] particular choice", and (3) state law causes of action that provide "alternative enforcement mechanisms" to the enforcement provisions of ERISA. *Id.* at 658–59, 115 S.Ct. 1671.

■ The third category applies to plaintiff's state law claims in this case. As a recent First Circuit case has held, when plaintiff brings a claim under ERISA "based on precisely the same conduct that underlies his state law [ ] claim[s], then the state law claims are viewed as alternative mechanism[s] for obtaining ERISA plan benefits" and are thus preempted. *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 51 (holding that a state law contract claim is preempted under ERISA when the claim relates to a benefit plan and when it is merely an alternative mechanism for obtaining ERISA plan benefits); *see also Turner v. Fallon Community Health Plan*, 127 F.3d 196, 199 (1st Cir. 1997), *cert. denied*, 523 U.S. 1072, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998) (holding that, despite the Supreme Court's recent restriction of ERISA preemption, common law claims for breach of contract remain preempted under ERISA when such claims fall within it's exclusive civil enforcement regime).

■ In deciding if plaintiff was entitled to "bridge" service credits from Southern Bell back to NET, this Court was required to analyze the NYNEX Plan as well as the Benefits Committee's decision interpreting that Plan. In addition, plaintiff's ERISA claims and state law claims are based on the same underlying facts. Thus, it is clear that plaintiff's claims "relate to" an employee benefit plan. Furthermore, plaintiff's state law causes of action are an attempt to use an alternative mechanism to obtain ERISA plan benefits in contravention of the NYNEX Plan and the Mandatory Portability Act in order to avoid the civil enforcement structure of ERISA. Plaintiff's claims for breach of contract, promissory estoppel and negligent misrepresentation are obviously an end run on ERISA. Plaintiff cannot secure a result under state law that is unachievable under ERISA.

This Court concludes with ease that plaintiff's state law claims in this case are preempted by ERISA. *See Carlo*, 49 F.3d at 794; *see also Donato v. Rhode Island Hospital Trust National Bank*, 52 F.Supp.2d 317, 323–24 (D.R.I.1999). For the foregoing reasons, defendant's motion for summary judgment on Counts II, III and V must be granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted on all Counts of the Amended Complaint. The Clerk shall enter judgment for defendant, forthwith.

It is so ordered.