**NATIONAL CENTER FOR IMMIGRANTS' RIGHTS, INC., et al., Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

No. CV 83–7927–KN (JRx).

United States District Court, C.D. California.

March 5, 1985.

Peter A. Schey, Carlos Holguin, National Center for Immigrants' Rights, Inc., Los Angeles, Cal., for plaintiffs.

George H. Wu, Asst. U.S. Atty., Los Angeles, Cal., Mark C. Walters, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

KENYON, District Judge.

In 1983, the Immigration and Naturalization Service ("INS") promulgated Regulations[1] ("the Regulations") which place a condition barring employment in an appearance and delivery bond in connection with deportation proceedings. The no-work condition operates as follows: When a person is arrested as a suspected illegal alien and is later released on bond pending a deportation proceeding, the suspect is barred from becoming employed. However, the suspect may obtain employment authorization from the INS District Director upon application establishing "compelling reasons" for granting employment.

This action, brought by Plaintiffs[2] on December 6, 1983, challenged the implementation of the Regulations on both statu-

---

1. 8 C.F.R. §§ 103.6(a)(2)(ii), (iii) (1983); 109.-1(b)(8) (1983).

2. Plaintiffs include thirteen nonprofit organizations providing free legal aid services to aliens with immigration problems, a local United Auto Workers affiliate, eleven named aliens held in detention, four named aliens released on bonds with conditions against unauthorized employment and one unnamed alien who claims to be deterred from filing for benefits with the INS because of fears that the new regulations would result in that alien's indefinite detention.

tory and constitutional grounds. On December 16, 1983, this Court granted a preliminary injunction enjoining the enforcement of the Regulations. The Court of Appeals upheld the preliminary injunction on September 28, 1984.

The INS then brought this Motion for Summary Judgment, pursuant to Fed.R. Civ.P. 56(b), on the grounds that there is no genuine issue as to any material fact and that the INS is entitled to judgment as a matter of law. The Court finds that no genuine issue of material fact exists and that summary adjudication is appropriate. The Court further finds that the Regulations at issue are invalid because they were promulgated beyond statutory authority. Therefore, the Court grants Summary Judgment for the Plaintiffs, National Center for Immigrants' Rights, *et al.*, based upon its First Cause of Action.

This Court's grant of Summary Judgment for the Plaintiffs, as nonmoving parties, is consistent with prior case law. *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311–12 (9th Cir.1982). Even though Plaintiffs have made no formal cross-motion under Fed.R.Civ.P. 56, summary judgment is appropriate in this case because the INS has had an adequate opportunity to show that there is a genuine issue of fact and that their opponent is not entitled to judgment as a matter of law. Moreover, this is "in keeping with the objective of Rule 56 to expedite the disposition of cases and ... with the mandate of Rule 54(c) requiring the court to grant relief to which a party is entitled 'even if the party has not demanded such relief in his pleadings.' " Wright & Miller, *Federal Practice and Procedure,* § 2720 (1983).

The Plaintiffs have asserted six Causes of Action in the instant case:

1. The Regulations at issue are invalid due to the fact that they were promulgated without statutory authority;

2. The INS Commissioner lacks statutory authority to promulgate the Regulations because they remove matters from the jurisdiction of immigration judges;

3. The Regulations violate the Fifth Amendment's Due Process Clause because it impinges on an important liberty interest without the opportunity for notice, hearing and a due process proceeding of record;

4. The Regulations violate the Fifth Amendment's Equal Protection guarantee due to the adverse effect on indigent people;

5. The Regulations are inconsistent with and superseded by other federal legislation;

6. The INS has failed to establish uniform procedures to implement "work authorization" policies and thereby violate Fifth Amendment guarantees of procedural and substantive due process.

The Court bases its ruling on the First Cause of Action and finds as a matter of law that the Regulations at issue were promulgated without statutory authority and are therefore invalid. Further, since the Court grants summary judgment on the Plaintiffs' First Cause of Action, consideration of the remaining five Causes of Action is unnecessary.

The Regulations state in relevant part:

§ 103.6  Surety bonds.

(a) ....

(2) *Bond riders—*(i) *General.* Bond riders shall be prepared on Form I–351 and attached to Form I–352. If a condition to be included in a bond is not on Form I–351, a rider containing the condition shall be executed.

(ii) *Condition against unauthorized employment.* A condition barring employment shall be included in an appearance and delivery bond in connection with a deportation proceeding or bond posted for the release of an alien in exclusion proceedings, unless the District Director determines that employment is appropriate.

§ 109.1  Classes of Aliens eligible.

....

(b) ....

(8) Any excludable or deportable alien who has posted an appearance and delivery bond may be granted temporary employment authorization if the District Director determines that employment is appropriate under § 103.6(a)(2)(iii) of this chapter.[3]

. . . .

(Sec. 103 of the Immigration and Nationality Act, as amended (8 U.S.C. 1103)) 8 C.F.R. §§ 103.6, 109.1 (1984).

The Court finds that two crucial issues are presented by this case. The first consists of whether the Attorney General can impose release conditions which are unrelated to securing the alien's presence at future deportation proceedings, yet which further the broad purposes of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* The second issue involves the discretion of the Attorney General to impose a blanket condition which inherently precludes any individualized determination.

I.  *Can the Attorney General impose release conditions based on § 1252(a) which further a broad purpose of the Immigration and Nationality Act, but which are unrelated to securing the alien's presence at future deportation proceedings?*

The INS claims that the Attorney General's authority to condition an alien's release with a no-work provision pending deportation proceedings is well within his discretionary powers to carry out the broad purposes of the Immigration and Nationality Act ("INA"). Citing the protection of the U.S. domestic labor force as the broad purpose of the INA, the INS asserts that the no-work condition is reasonably related to this legitimate government interest. The INS bases its argument on the language,

legislative history, and judicial and administrative interpretations of 8 U.S.C. § 1252(a).

That section states:

Pending a determination of deportability in the case of any alien ..., such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, *containing such conditions as the Attorney General may prescribe;* or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody and detained until final determination of his deportability.

8 U.S.C. § 1252(a) (emphasis added).

Although § 1252(a) appears on its face to grant a great deal of discretion to the Attorney General in his decision on whether to release an alien under bond, this discretion must be interpreted in light of a previous version of § 1252(a) as contained in § 242 of the Immigration and Nationality Act and its legislative history. This previous version read in part:

... such alien may, in the discretion of the Attorney General, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole. *It shall be among the condi-*

---

**3.** § 103.6(a)(2)(iii) provides factors to be considered for a grant of employment authorization:

*Factors to be considered.* Only those aliens who upon application under § 109.1(b) of this chapter establish compelling reasons for granting employment authorization may be authorized to accept employment. Among the factors which may be considered when an application is made, are the following:

(A) Safeguarding employment opportunities for United States citizens and lawful permanent resident aliens;

(B) Prior immigration violations by the alien;

(C) Whether there is a reasonable basis for considering discretionary relief; and

(D) Whether a United States citizen or lawful permanent resident spouse or children are dependent upon the alien for support, or other equities exist.

*tions of any such bond, or of the terms of release on parole, that the alien shall be produced, or will produce himself when required to do so for the purpose of defending himself against the charge or charges under which he was taken into custody....*

Pub.L. 831, 81st Cong., 1st Sess. § 23, reprinted in 1950 U.S.Code Serv. 1006 (emphasis added).

The accompanying legislative history of the previous version of § 1252(a) stated:

These provisions, of course, enumerate only one of the conditions which is mandatory in the bond or as a parole condition. *This bill intends that the Attorney General shall have full discretion in imposing any other conditions or terms in the bond or parole agreement which he may see fit to include. Thus, a man released on bond might have as a condition of the bond that he also be subject to make periodic reports to the immigration officials as to his whereabouts and furnish other desired information.* Or a bond might provide as one of its conditions that upon demand by the Attorney General the existing bond shall be surrendered and a new bond in greater or less amount or other conditions shall be furnished. This bill intends that the Attorney General shall have untrammeled authority to impose such conditions or terms as he sees fit in releasing an alien under bond or conditional parole pending final determination of the deportability of the alien....

H.R.Rep. No. 1192, 81st Cong., 1st Sess. 6 (1949); S.Rep. No. 2239, 81st Cong., 2d Sess. 5 (1950) (emphasis added). The applicability of this legislative history is underscored by H.R.Rep. No. 1365, 82d Cong., 2d Sess., 57, reprinted in 1952 U.S.Code Cong. & Ad.News 1653, 1711, which indicates that when Congress enacted § 1252(a) in its present form in 1952, that "this provision, in general, follows the procedure established by section 23 of the Subversive Activities Control Act of 1950." *Id.* Therefore, the scope of discretionary authority given to the Attorney General under the

previous version also governs the scope of the discretionary authority provided here. Thus, the scope of discretionary authority of the Attorney General remains unchanged under § 1252(a).

■ The Court finds that the aforementioned statutory language, as shown by its legislative history, reveals that the Attorney General's discretion to condition release on bond pending deportation is properly limited to conditions which are related to obtaining an alien's appearance at future proceedings. This finding is buttressed by the specific examples in the 1949 and 1950 legislative history of the previous version of § 1252(a), as well as a November 7, 1983 rulemaking proceeding for the Regulations at issue.

At the rulemaking proceeding, as reflected by 48 Fed.Reg. 51142 (November 7, 1983),

Many commentators contended that the no-work condition is contrary to the purpose of the appearance bond, which is to assure the appearance of the alien at a deportation or exclusion hearing. Most commentators who focused on this issue asserted that assuring appearance was the *only* purpose of the bond.

The INS asserted after this proceeding that:

While it is true that most bond conditions are aimed at ensuring appearance of an alien there does not appear to be any reason under Section 242 of the Act to limit conditions of release.

*Id.* The INS relied on the Attorney General's broad interpretation of his authority in this matter in *Matter of Toscano-Rivas,* 14 I. & N.Dec. 550, 555 (A.G.1974), in support of this proposition. This Court does not find *Toscano* persuasive, especially in light of the ambivalent language which permeates that case. For instance, the Attorney General states that "the pertinent statutory provisions authorize, *in at least some* circumstances, the inclusion in appearance-and-delivery bonds of conditions which bar unauthorized employment." *Id.* at 553 (emphasis added). In addition, the Attorney General proclaims that "it *may*

be proper to impose [such bond conditions] upon aliens who become subject to deportation proceedings." *Id.* at 555 (emphasis added). Such language is a far cry from a persuasive, well-documented argument.

The INS' reliance on *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), in asserting that the Attorney General may condition release on the basis of protecting the public interest (i.e. American Labor) is misplaced.

*Carlson* involved a challenge to the Attorney General's power to hold five active Communists without bail pending the determination of their deportability. The Supreme Court examined the applicable deportation standards and found that in carrying out the policies and standards as to what aliens are subject to deportation, "the Attorney General is not left with untrammeled discretion as to bail.... He must justify his refusal of bail by reference to the legislative scheme to eradicate the evils of Communist activity." 342 U.S. 524, 543, 72 S.Ct. 525, 536, 96 L.Ed. 547.

The *Carlson* Court examined the specific legislative scheme of Title I, § 2 of the Internal Security Act of 1950 and found that the statute granted the Attorney General discretion broad enough to justify his detention of the Communists. *Id.* at 541, 72 S.Ct. at 534. The statute provides in relevant part:

The Communist organization in the United States, pursuing its stated objectives, the recent successes of Communist methods in other countries, and the nature and control of the world Communist movement itself, present a clear and present danger to the security of the United States and to the existence of free American institutions, and make it necessary that Congress, in order to provide for the common defense, to preserve the sovereignty of the United States as an independent nation, and to guarantee to each State a republican form of government, enact appropriate legislation recognizing the existence of such world-wide conspiracy and designed to prevent it from accomplishing its purpose in the United States.

Internal Security Act, Title I, § 2(15) (1950). Based on its examination of the legislative scheme, the *Carlson* Court found that this provision was,

designed to eliminate the subversive activities of resident aliens who seek to inculcate the doctrine of force and violence into the political philosophy of the American people. To this end provision was made for the detention and deportation of certain non-citizens, including members of the Communist Party.

342 U.S. at 544, 72 S.Ct. at 536. Although the Court addressed the issue of securing the aliens' presence at future deportation proceedings, it found that the Communist threat to the national security was controlling: "... [W]e also take into consideration the factor of probable availability for trial, which we do not think is of great significance in cases involving security from Communist activities of alien Communists...." *Id.* at 541 n. 35, 72 S.Ct. at 535 n. 35.

The broad scope of discretionary power granted to the Attorney General by § 2 of the Internal Security Act is distinguishable from his power to impose bond conditions under the INA. As the Court of Appeals noted in *National Center for Immigrants' Rights, et al. v. Immigration and Naturalization Service, et al.,* 743 F.2d 1365, 1370 (9th Cir.1984):

In contrast to Congress' clear directives under the Internal Security Act in the area of national security, "the INA evinces 'at best evidence of peripheral concern with the employment of illegal entrants.'" *Sure-Tan, Inc. v. NLRB,* [467 U.S. 883] 104 S.Ct. 2803, 2809 [81 L.Ed.2d 732] (1984) (quoting *De Canas v. Bica,* 424 U.S. 351, 361 [96 S.Ct. 933, 939, 47 L.Ed.2d 43] (1976)).

Furthermore, Supreme Court cases have demonstrated that *Carlson* is not applicable to this case. *Sure-Tan, Inc. v. NLRB,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) and *De Canas v. Bica,* 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) cast

doubt on the INS' assertion that the legislative scheme of the INA justifies the Attorney General's exercise of discretion to impose no-work conditions on release. The *De Canas* Court stated:

> The central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country. The comprehensiveness of the INA scheme for regulation of immigration and naturalization, without more, cannot be said to draw in the employment of illegal aliens as "plainly within ... (that) central aim of federal regulation."

424 U.S. 351, 359, 96 S.Ct. 933, 938 (emphasis added). *See also Sure-Tan, Inc.*, 104 S.Ct. 2803, 2809.

In light of *De Canas,* the INA cannot serve as the "legislative scheme" which authorizes the Attorney General, based upon the purpose of the protection of the domestic labor market, to impose no-work restrictions in appearance and delivery bonds. Therefore, this Court finds that the Attorney General's discretion to impose release conditions must be limited to those conditions which are related to securing the alien's presence at future deportation proceedings.

II. *Can the Attorney General impose a blanket no-work condition on all illegal aliens who are released on bond pending deportation proceedings?*

The INS asserts that it is within the Attorney General's authority to impose an employment prohibition on *all* release bonds as per § 1252(a). Thus, they argue that a blanket condition should apply, rather than a condition based upon individualized determinations.

*Carlson* does not lend credence to such an argument, and can be further distinguished from the instant case. In *Carlson,* there was evidence as to *each* individual,

> indicating that he was at the time of arrest a member of the Communist Party

of the United States ... and had participated ... in the Party's indoctrination of others to the prejudice of the public interest.

342 U.S. at 530, 72 S.Ct. at 529. This evidence of membership and personal activity in the Communist Party for each alien justified the exercise of the Attorney General's discretion to deny bail. *Id.* at 541, 72 S.Ct. at 534.

Moreover, the *Carlson* Court found that not all deportable aliens were denied bail under the 1950 Internal Security Act. *Id.* at 541–42, 72 S.Ct. at 534–35. This should be contrasted with the INS Regulations which subject all arrested aliens to the no-work condition on bail unless the alien can overcome the heavy burden of proving "compelling reasons" for granting employment authorization.

This Court agrees with Justice Frankfurter's dissent in *Carlson* which states that the Attorney General's discretion to impose a condition based on an individualized determination is different from his authority to do so by means of a blanket rule:

> If the Attorney General, after the Internal Security Act, had made a general ruling that thereafter he would not allow bail to any alien against whom deportation proceedings were started and who was then a member of the Communist Party—an undiscriminating, unindividualized class determination—it would disregard the clear direction of Congress for this Court not to hold that the Attorney General had exceeded the limits of his discretion.

*Id.* at 558, 72 S.Ct. at 543. It should be noted that this aspect of Justice Frankfurter's dissenting opinion is in consonance with the majority decision in *Carlson,* which was based upon evidence as to *each* individual.

Several other judicial and administrative interpretations have upheld the principle that the "factors relevant to the exercise of discretion are factors that pertain to each

individual as an individual." *Id.* at 562, 72 S.Ct. at 545. *See Rubinstein v. Brownell*, 206 F.2d 449, 455–56 (D.C.Cir.1953) (detention of alien seeking judicial review of deportation order was improper when Attorney General made no showing that the alien would abscond or engage in subversive or criminal activity), *aff'd per curiam by an equally divided court*, 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421 (1954); *O'Rourke v. Warden*, 539 F.Supp. 1131, 1137 (S.D.N.Y.1982) (court should review Board of Immigration Appeals' decision to deny bail to determine whether it has a reasonable foundation in the record); *Matter of Patel*, 15 I. & N. Dec. 2491 (an alien should not be detained or required to post bond except on a finding that he is a threat to the national security, or that he is a poor bail risk).

In addition, under the prior regulation, the INS required individualized determinations in each case of the propriety of attaching a no-work condition to a bond. While the INS has the authority "in a *proper* case to impose a bond condition prohibiting unauthorized employment,"[4] it was not permitted in *Matter of Vea*, 15 I. & N. Dec. 2890 (BIA 1981). However, such a condition was upheld in *Matter of Chew*, 15 I. & N. Dec. 2910 (BIA 1982), based on a finding that it was "appropriate in this case." *Id.* at p. 265.

Therefore, this Court finds that the discretion of the Attorney General does not extend to the blanket imposition of a no-work condition on all aliens who are released on bond pending future deportation proceedings.

For the reasons discussed above, this Court finds that the Regulations have been promulgated beyond the statutory authority of the Attorney General and are therefore invalid. Accordingly, Summary Judgment is granted to the Plaintiffs.

Plaintiffs are asked to prepare proposed findings of fact and conclusions of law by March 15, 1985.

4. *Matter of Vea*, 15 I. & N. Dec. 2890, p. 174.