Tracy v. Principal                    CV-95-135-M    01/18/96 P

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Jeannine I. Tracy,
     Plaintiff,

     v.                                    Civil No. 95-135-M

The Principal Financial Group,
     Defendant.


                         O R D E R


     Plaintiff, Jeannine Tracy, originally brought this action in
the New Hampshire Superior Court, seeking a declaration that she
was entitled to coverage under an insurance policy issued by
defendant, Principal Mutual Life Insurance Group ("Principal").
Principal then filed a notice of removal, asserting federal
question jurisdiction based on preemption of plaintiff's state
law claims under the Employee Retirement Income Security Act
("ERISA"), 29 U.S.C. §1001, et seq.  Plaintiff objects to removal
of her suit from the state forum, arguing that the insurance
policy under which she seeks coverage is not related to a plan
governed by ERISA.  Accordingly, she asserts that her state law
claims are not preempted and this court lacks subject matter
jurisdiction.  For purposes of this order, the court will treat
plaintiff's objection as a motion to remand this case to state
court.

Plaintiff says that the policy issued by Principal under which she seeks coverage (the "Policy") does not constitute an "employee welfare benefit plan" within the statutory definition. Specifically, she claims that the Policy is entirely independent of any employee welfare benefit plan established or maintained by her present or former employer. Moreover, she claims that even if ERISA might otherwise govern the extension of benefits under the Policy, the Policy still falls within the scope of the "safe harbor" provision set forth at 29 C.F.R. §2510.3-1(j) and, therefore, is expressly deemed <u>not</u> to qualify as an employee welfare benefit plan.

Because the court finds that the Policy is part of an ERISA-governed employee welfare benefit plan, not protected by the safe harbor, the court may exercise federal question jurisdiction over the parties' dispute and removal to this court was proper.

## Discussion

From 1976 to 1985, plaintiff worked for the Charles Gordon Insurance Agency, a member of the National Association of Professional Insurance Agents ("PIA"). Charles Gordon provided its employees (including plaintiff) with disability insurance, under a long-term disability plan managed by PIA. This plan was

2

available to all employees. Under the plan, employees were provided with an opportunity to select from four different levels of disability insurance, each of which was funded by a separate group insurance policy issued by Lumbermens Mutual Casualty Company ("Lumbermens"). The disability coverage initially selected by plaintiff was funded by Lumbermens' policy number P12608. Plaintiff acknowledges that her employer at the time, Charles Gordon, paid the policy premiums and that the PIA group disability insurance program constitutes an ERISA-governed employee welfare benefit plan.

In 1985, plaintiff's employer (Gordon) was purchased by the Insurance Exchange. Plaintiff stayed on as an employee and continued to participate in the disability plan. On December 4, 1987, she applied for an increase in long-term disability benefits. Her application was approved and, on February 1, 1988, Lumbermens issued plaintiff a certificate of coverage under a new group policy (number P12459), which provided insurance to all members of the plan who had selected that particular level of benefits. According to plaintiff, she then began paying all premiums for that policy herself, a fact upon which she relies heavily in arguing that the policy is not part of any ERISA-governed employee welfare benefit plan. Importantly, however,

3

plaintiff's change in coverage merely represented an increase from one level of benefits available under the plan established by her former employer, Charles Gordon, to a higher level under that same plan. Although she was no longer employed by Charles Gordon, plaintiff was eligible to continue participation in the plan because she and her new employer were members of the PIA, although, unlike Gordon, her new employer did not pay the premiums.

In 1988, Principal replaced Lumbermens as the underwriter of benefits under the plan. Unlike Lumbermens, which issued a separate group insurance policy for each of the four different levels of benefits available under the plan, Principal issued a single group insurance policy. Accordingly, on April 1, 1988, Principal provided plaintiff with a copy of the group insurance policy at issue in this case (number 53080). Like the former Lumbermens policies, the Principal policy provided four different levels of benefits, each of which was an option originally available to plaintiff under the plan established by Charles Gordon.

Plaintiff argues that the policy here at issue is wholly distinct from the Lumbermens policies which originally funded the

4

benefits available under the ERISA plan established by Charles Gordon, and in that she is correct. But the benefits she seeks are benefits under the plan; the mechanism of funding changed from one policy and insurance company to another, but the plan and plan benefits for which she remained eligible did not change. Plaintiff plainly seeks coverage under one of the levels of disability coverage originally available to her under the plan established by her former employer, and in which she continued to participate during her subsequent employment. There can be little dispute that if, when she was employed by Charles Gordon, plaintiff had originally selected the higher level of disability coverage offered by the plan, under which she now seeks benefits, her current claim would be governed by ERISA (and the plan would not fall within the scope of the safe harbor provision). The fact that she originally selected a lower level of benefits and subsequently opted for augmented coverage, under the plan, does not alter that result. Nor does the fact that she is no longer employed by Charles Gordon alter the result. Simply stated, plaintiff seeks coverage under an employee welfare benefit plan established by her former employer, made available through the PIA to its members, and now funded through a group insurance policy issued by Principal. Accordingly, plaintiff's claims

5

"relate to" an employee welfare benefit plan governed by ERISA, and removal to this court was proper.

As a practical matter, when insurance benefit claims are found to be governed by ERISA the likelihood that a plaintiff will prevail is often markedly reduced. Here, for example, this plaintiff will not be entitled to the otherwise applicable burden-shifting provisions of New Hampshire's Declaratory Judgment Act, N.H. RSA 491:22-a. And, of course, benefit eligibility determinations made by trustees of ERISA-governed plans are normally accorded a great deal of judicial deference (i.e., courts usually review discretionary decisions under the "arbitrary and capricious" rather than the de novo standard). These factors normally make it more difficult for a plaintiff/insured to successfully challenge a benefit determination made by a plan trustee or administrator (who is more often than not the policy-issuing insurance company). "As is typical in these [insurance] preemption cases, a removing defendant tows the case into the federal harbor only to try to sink it once it is in port." La Buhn v. Bulkmatic Transport co., 644 F.Supp. 942, 948 (N.D.Ill. 1986), aff'd, 865 F.2d 119 (7th Cir. 1988).

6

However, entering the federal forum does not necessarily require plaintiff to abandon all hope. To continue the earlier metaphor, her ship may be more seaworthy than Principal anticipates. As this court recently noted in Schuyler v. Protective Life, 92-192-M (D.N.H. December 20, 1994):

> [The traditional analytical approach to applying the "arbitrary and capricious" standard of review in ERISA cases] is not necessarily a complete one for every case. In this case, for example, another factor -- conflict of interest -- must also be considered. As both underwriter of the insurance policy which funds the benefit plan and an entity vested with discretionary authority to make benefit determinations, Protective Life obviously finds itself in an unavoidable conflict of interest. "Because an insurance company pays out to beneficiaries from its own assets rather than from the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business, and the conflict of interest is substantial." In Firestone, supra, the Supreme Court noted that, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."

Id. (citations omitted). Accordingly, the degree of deference accorded Principal's decisions regarding benefit entitlement will be tailored to fit the magnitude of Principal's conflict of interest, if any, in order to neutralize the effects of any such conflict.

7

## Conclusion

The disability benefits to which plaintiff asserts she is entitled and her claims against Principal "relate to" an employee welfare benefit plan governed by ERISA. Accordingly, defendant's removal to this court was appropriate. Plaintiff's motion to remand (document no. 5) is denied. Plaintiff is granted until February 16, 1996, to file a well pleaded complaint in federal form setting forth her claims under ERISA. She is also granted leave until that date to add additional defendants (e.g., the Plan, its administrator, etc.), if the addition of such defendants is warranted under ERISA.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

January 18, 1996

cc:  Blake M. Sutton, Esq.
     William L. Chapman, Esq.

8