Webster v. ITT-Hartford                   CV-97-373-JD  11/02/98

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Katherine A. Webster

        v.                              Civil No. 97-373-JD

ITT-Hartford Life
and Annuity Insurance Co.


                            O R D E R


     Defendant, ITT-Hartford Life and Annuity Insurance, moves
for summary judgment (document no. 6) asserting that Katherine
Webster's state law claims are preempted by the Employee
Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001, et
seq., and that her long-term disability benefits were properly
terminated.  Ms. Webster objects, contending that her state law
claims are exempted from ERISA preemption and that Hartford
improperly terminated her benefits under ERISA.  For the reasons
that follow, summary judgment is granted in favor of Hartford.


                        Standard of Review

     Summary judgment is appropriate only if the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c). The moving party bears the initial burden of informing the court of the basis for the motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). If the moving party meets its threshold obligation, the nonmoving party must establish specific facts, with appropriate record references, showing that there is a genuine dispute of material fact as to each issue for which the nonmoving party bears the burden of proof at trial. See id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). For summary judgment analysis, the court construes the record in the light most favorable to the nonmoving party and indulges all reasonable factual inferences in its favor. See Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997). Thus, summary judgment should be granted when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See City of Hope National Medical Center v. Healthplus, Inc., No. 98-1038, 1998 WL 568610, at *2 (1st Cir. Sept. 11, 1998).

## Background

Ms. Webster was employed by Mary Hitchcock Memorial Hospital as an operating room nurse in April of 1993 when she was injured in a skiing accident. Ms. Webster injured both knees in the accident and underwent arthroscopic surgery which revealed damage

to ligaments in both knees.  Ms. Webster had reconstructive surgery for her left anterior cruciate ligament in July and for her right cruciate ligament in October of 1993.

As a Hitchcock employee, Ms. Webster was insured for short and long term disability benefits through a group policy with Hartford.  Because of her injury, Ms. Webster was unable to work and began to receive short-term benefits in April 1993.  In August 1993, Ms. Webster applied for and was granted long-term benefits to begin in October.

Dr. Shirreffs, Ms. Webster's treating orthopedic surgeon, completed disability forms in support of her applications for benefits.  In November of 1993, Dr. Shirreffs indicated that he expected Ms. Webster to be able to return to work as an operating room nurse in four to six months.  In a form completed in January of 1994, Dr. Shirreffs indicated that Ms. Webster was capable of doing light work but not her job as an operating room nurse.  He found that she was not disabled from all other jobs.

Ms. Webster returned to her nursing job on a part-time basis in March of 1994.  While she worked part-time, she continued to receive benefits in a reduced amount.  In June of 1994, Dr. Shirreffs indicated that Ms. Webster would require several more months of rehabilitation before she would be able to return to full-time work.  Ms. Webster hoped to find another nursing

position at Hitchcock that was less physically taxing than operating room work, but no such position was then available. She was not chosen for an open position as a case facilitator. Ms. Webster then decided to return to school to earn her bachelor degree in nursing and Hartford agreed to subsidize one-third of the projected cost of her training while she remained eligible for long-term disability benefits.

In January of 1995, Ms. Webster stopped working and began her college program. Dr. Shirreffs's evaluation in May of 1995 indicated, as in October of 1994, that Ms. Webster was capable of light work, that she was disabled from her previous work, but not from all other work. A telephone call record dated in July of 1995 says that Ms. Webster reported to Hartford that she would receive her degree in December of 1996 and that she was aware that her disability benefits would "almost definitely" be terminated before that time.

Under Hartford's long-term disability policy, an insured must be "totally disabled," as defined in the policy, to receive benefits. The definition of "totally disabled" changes after an initial period of receiving benefits. During an insured's six-month qualifying period and for the next twenty-four months, an insured is totally disabled if she "is prevented by accidental bodily injury or sickness from doing the material and substantial

4

duties of [her] own occupation."  Thereafter, an insured is "totally disabled" only if she "is prevented by accidental bodily injury or sickness from doing any occupation or work for which [she] is or could become qualified by training; or education; or experience."  Hartford's Appendix ("Def. App.") at 8.

Hartford notified Ms. Webster on September 29, 1995, that her benefits would be terminated as of October 3, 1995, which was the twenty-four month anniversary date of when her long term benefits began.  Ms. Webster appealed the termination of her benefits and submitted additional evidence of her disability from Dr. Shirreffs and Dr. Morgan.  Dr. Shirreffs completed another evaluation form dated December 8, 1995, based on an examination in October of 1995, in which he indicated that Ms. Webster's condition was improved and that she was still capable of light work, but he said she was totally disabled from both her previous work and any other job.  Dr. Morgan, who treated Ms. Webster for rheumatoid arthritis, examined her in December of 1995.  He wrote to Ms. Webster's counsel that her rheumatoid arthritis in her hands, wrists, and shoulders combined with her knee problems made her totally disabled from work specifically as to walking, climbing, lifting, squatting, kneeling, and repetitive tasks using the hands.  Dr. Morgan marked on a physical capacities form that Ms. Webster could do sedentary work but then said in a

5

letter sent six months later that she could not work at the sedentary level.

In response to her appeal, Hartford notified Ms. Webster in September of 1996 that it had determined that its decision to terminate her long term disability benefits was appropriate. Ms. Webster graduated from her college program in December of 1996, and began to work full-time in January of 1997.

Ms. Webster brought a declaratory judgment action in New Hampshire state court in July of 1997 against Hartford seeking long-term disability benefits for the period from October 3, 1995, until January of 1997; reimbursements for the costs of her college program; damages for all economic losses and emotional distress associated with the termination of her benefits; treble damages pursuant to New Hampshire's consumer protection law, New Hampshire Revised Statutes Annotated ("RSA") § 358-A:2; and attorneys' fees. Hartford removed the action to this court on grounds that the exclusive remedy for Ms. Webster's claims was through ERISA. Hartford now moves for summary judgment in its favor.

## Discussion

The parties agree that the Hartford long term disability policy in question is an employee benefit plan governed by ERISA.

6

Ms. Webster contends that her state law causes of action are exempted from ERISA preemption through the ERISA "savings clause," 29 U.S.C.A. § 1144(b)(2)(A).  With respect to her ERISA claims, Ms. Webster urges a de novo review of the decision of the plan administrator and argues that her claims under ERISA survive summary judgment.

A.   State Law Claims

ERISA's preemption of state law claims is limited by a provision known as the "insurance saving clause" that exempts state laws regulating insurance from ERISA governance.  29 U.S.C.A. § 1144(b)(2)(A).  To come within the exemption provided by § 1144(b)(2)(A), "a law must not merely have an impact on the insurance industry, or on particular insurance products, but must be directed specifically toward the business of insurance." Williams v. Ashland Engineering Co., Inc., 45 F.3d 588, 592 (1st Cir. 1995).

This court has previously determined that New Hampshire's consumer protection statute, RSA § 358-A:2, is not a law regulating insurance within the meaning of section 1144(b)(2)(A).  See Camire v. Aetna Life Ins. Co., 822 F. Supp. 846, 852-53 (D.N.H. 1993).  Ms. Webster has offered no basis for reconsideration of the court's analysis in Camire.  Accordingly, Ms.

7

Webster's consumer protection claim is preempted by ERISA, and Hartford is entitled to summary judgment on that claim.

Ms. Webster's state law claim seeking a declaration of her right to benefits under RSA § 491:22 is not exempt from ERISA governance since the New Hampshire declaratory judgment statute does not regulate the business of insurance within the meaning of section 1144(b)(2)(A). To regulate the business of insurance within the meaning of § 1144(b)(2)(A), the state statute must first meet a common sense definition of insurance regulation, and second, must satisfy each of three factors: (1) the state law has the effect of transferring or spreading a policyholder's risk; (2) the state law is an integral part of the policy relationship between insurer and insured; and (3) the state law is limited to entities within the insurance industry. <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 48 (1987) (citing <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 740 (1985)). In addition, if the state cause of action "seeks remedies for the improper processing of a claim for benefits under an ERISA-regulated plan," it is preempted by the exclusive remedies provided through ERISA as the legislative intent of ERISA was to provide a uniform and exclusive remedy in claims for benefits under ERISA-regulated plans. <u>Pilot</u>, 481 U.S. at 52-57.

Section 491:22, including the burden of proof provision of

8

section 491:22-a, does not meet the common sense test of a law regulating the business of insurance. Section 491:22 does not control insurance business practices. Instead, it fixes the burden of proof in New Hampshire declaratory judgment cases concerning insurance coverage, and is not a law controlling business practices in insurance. RSA § 491:22-a. Even if Ms. Webster were able to show that section 491:22 met the common sense test and would satisfy the three Metropolitan factors, however, ERISA is the exclusive remedy in a claim for benefits under an ERISA-regulated plan precluding exemption under section 1144(b)(2)(A) in this case. See, e.g., Tracy v. Principal Financial Corp, 948 F. Supp. 142, 144 (D.N.H. 1996); Patuleia v. Sun Life, 95-358-M, slip op. at 4-5 (D.N.H. Jan. 19, 1996); Schuyler v. Protective Life Ins., No. 92-192, slip op. at 9, (D.N.H. Duly 23, 1993). Claims brought under section 491:22 and related provisions pertaining to the burden of proof and attorneys' fees are preempted by and not exempt from ERISA.

Ms. Webster's state common law claim for emotional distress, seeking damages for harm caused by Hartford's decision to terminate benefits, is also preempted by ERISA. See Pilot Life, 481 U.S. at 47-48 (common law claim for emotional distress preempted). Ms. Webster has not argued that her emotional distress claim is exempt, pursuant to section 1144(b)(2)(A).

Accordingly, Hartford is entitled to summary judgment with respect to Ms. Webster's claims brought under New Hampshire law.

Ms. Webster also argues that Hartford's policy language defining long term disability is at odds with the rules of the New Hampshire Insurance Commission. As Ms. Webster has identified no private state law cause of action arising from an alleged violation of the Commission's rules, none of her state law claims may be exempted from ERISA on that basis. See, e.g., Andrews-Clarke v. Travelers Ins. Co., 984 F. Supp. 49, 56 n.22 (D. Mass. 1997).

B. ERISA Claim

Ms. Webster also seeks benefits under ERISA, 29 U.S.C.A. § 1132(a). When a plan beneficiary challenges a denial of benefits from an ERISA-regulated plan, the decision is reviewed under a de novo standard unless the plan gives the administrator discretionary authority to determine eligibility or to construe terms of the plan. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan confers the requisite discretionary authority, the court reviews an administrator's decision under a deferential arbitrary and capricious standard. See id., see also Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). While the decision of an impartial and disinterested

10

administrator is entitled to great deference, a conflict of interest in the decision making process will be considered "in determining whether there is an abuse of discretion."  Firestone, 489 U.S. at 115 (citations omitted).


1.  Standard of Review

Ms. Webster relies on the burden of proof provided in RSA § 491:22-a as part of the standard of review for her ERISA claim. While section 491:22-a provides the burden of proof in diversity jurisdiction cases involving insurance coverage, see General Linen Serv. Co. v. Charter Oak Fire Ins. Co., 951 F. Supp. 15, 17-18 (D.N.H. 1995), a dispute governed by ERISA is founded on federal question subject matter jurisdiction and federal law applies, see Tracy, 948 F. Supp. at 144.  In the unpublished case Ms. Webster relies on, Johnson v. Watts Regulator Co., No. 92-508, the district court held that ERISA did not govern the long term disability policy in question as it was not a plan established or maintained by an employer as required by the statute.  Id., 1994 WL 258788 (D.N.H. May 3, 1994), aff'd, 63 F.3d 1129 (1st Cir. 1995).  Since the court's subject matter jurisdiction rested on diversity of the parties' citizenship in Johnson, the court applied New Hampshire decisional law including the applicable burden of proof.  See Johnson, No. 92-508, 1994 WL

11

587801, at \*6 (D.N.H. Oct. 26, 1994), aff'd, 63 F.3d 1129 (1st Cir. 1995). Because ERISA controls Ms. Webster's claims in this case, federal law applicable to ERISA claims provides the standard of review.

Under applicable federal law, "a benefits plan must clearly grant discretionary authority to the administrator before decisions will be accorded the deferential, arbitrary and capricious, standard of review." Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir. 1993). Hartford, as the administrator of its plan, relies on language in the "Proof of Loss" section of the policy as a grant of discretionary authority sufficient to invoke the deferential standard of review: "The Hartford reserves the right to determine if proof of loss is satisfactory." Ms. Webster argues that the policy language is not sufficiently clear to entitle Hartford's decision to deference. In particular, Ms. Webster contends that the language does not explain what is to be proven or the purpose for submitting proof.

For purposes of a deferential standard of review, the plan must clearly grant discretionary authority to decide claims, Rodriguez-Abreu, 986 F.2d at 583, but need not clearly define what information is necessary to make a sufficient claim, as Ms. Webster contends. The language in the Hartford policy is neither

12

as clear nor as detailed as the description of decisional authority considered in Terry.  See Terry, 145 F.3d at 37, (plan gave Bayer "exclusive right" to make necessary factual findings, to interpret the plan's terms, and to determine a claimant's eligibility for benefits).  On the other hand, the Hartford plan language is more specific than the statement determined to be insufficient in Cooke v. Lynn Sand & Stone Co., 70 F.3d 201, 204 (1st Cir. 1995), where "the plan language stated only that the administrator had 'exclusive control and authority over administration of the Plan.'"  Terry, 145 F.3d at 37.

Two other district courts determined that the same language in Hartford long term disability benefit plans was a sufficiently clear grant of discretionary authority to require a deferential standard.  See Vesaas v. Hartford Life & Accident Ins. Co, 981 F. Supp. 1196, 1199 (D. Minn. 1996), aff'd, 124 F.3d 209 (8th Cir. 1997); Ceasar v. Hartford Life and Accident Ins. Co., 947 F. Supp. 204, 206 (D.S.C. 1996).  "Magic words" are not necessary to confer discretionary authority, and most courts have found a sufficient grant of authority in proof of loss statements when the plan required that a claimant's evidence of loss be satisfactory to the insurer.  See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555-56 (6th Cir. 1998) (citing cases).

13

Taken in context,[1] the proof of loss statement gives Hartford the right to determine whether a claimant's proof of disability is satisfactory to Hartford for purposes of awarding benefits. Accordingly, the statement is a sufficient grant of discretionary authority to invoke deferential review.

Ms. Webster contends that deference is inappropriate in this case because Hartford was operating under a conflict of interest since Hartford was both the administrator, deciding who will receive benefits, and the insurer, liable for paying benefits. Ms. Webster offers no evidence of an actual conflict or that Hartford's decision was improperly influenced by the existence of a conflict of interest. While crediting an inference that Hartford's dual role as administrator and insurer of the plan may conflict with a beneficiary's interest in receiving benefits, a competing motive may be inferred that an insurer would not be overly "tight fisted" in benefit determinations in order to maintain good relations with the employer and to continue participation in the plan. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). In circumstances of an

---

[1] ERISA governed plans are construed using federal common law which employs "common-sense canons of contract interpretation" including interpreting contracts according to their plain meaning taken in context. Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995) (quotation omitted).

14

inferred conflict, the court applies the deferential arbitrary and capricious standard "with special emphasis on reasonableness, but with the burden on the claimant to show that the decision was improperly motivated."[2]  Id.  As Ms. Webster offers no evidence that the decision was improperly motivated, the court will proceed under a deferential standard of review.

2.  Hartford's Decision to Terminate Benefits

In determining whether Hartford's decision was arbitrary or capricious, "a court is not to substitute its judgment for that of the decision-maker," but rather the decision will not be disturbed if it is reasonable.  Terry, 145 F.3d at 39 (quotations omitted).  A decision is reasonable as long as it is "rational in light of the plan's provision" and shows no abuse of discretion. Tavares v. Unum Corp., No. 96-614-L, 1998 WL 566012, at *5 (D.R.I. Sept. 2, 1998).

Hartford's long term disability policy required that a claimant be "totally disabled" within the meaning of the policy to be eligible for long term disability benefits.  For the first thirty months (the six month qualifying period and twenty-four

_____

[2]The court notes that neither party cited applicable First Circuit law pertaining to the appropriate standard for evaluating a decision under a conflict of interest.

15

months thereafter) the policy defined "totally disabled" to mean "that the Insured Person is prevented by accidental bodily injury or sickness from doing the material and substantial duties of his own occupation." Hartford's Appendix ("Def. App.") at 8. After that initial period, a claimant would remain eligible for benefits "as long as he stays disabled," meaning "that he is prevented by accidental bodily injury or sickness from doing any occupation or work for which he is or could become qualified by: training; or education; or experience." Id.

After receiving benefits for thirty months, Ms. Webster was notified that Hartford had determined "that by your education, training, and experience, you qualify for occupations in nursing which do not require lifting or prolonged standing, i.e., medical case management, nurse in doctor's office, research, etc." For that reason, Hartford determined that Ms. Webster was no longer totally disabled, as defined in the policy, for the period after the initial thirty months of benefits.

Ms. Webster argues that Hartford's definition of "totally disabled" is prohibited by the New Hampshire Insurance Commissioner's rules and, therefore, that the definition in the rules should apply. The referenced rules provide, in pertinent part, that policies may define total disability "in relation to the inability of the person to perform duties but such inability

16

may not be based solely upon an individual's ability to: (1) Perform 'any occupation whatsoever,' or 'any occupational duty,' or 'each and every duty of his occupation,' or (2) Engage in any training or rehabilitation program." N.H. Code Admin. R. Ins. 1901.04(13) (1993). Although Ms. Webster's argument is not entirely clear, she seems to contend that Hartford's decision was based on her ability to be trained for other work and that requirement violated the Commission's rule. She also contends that Hartford's agreement to pay part of her school tuition as long as she remained totally disabled, when Hartford knew that she would not qualify as "totally disabled" as soon as the second definition became applicable, violated public policy.

Even if the New Hampshire insurance rule defining disability would apply in this context, it offers no support for Ms. Webster's claim. As Hartford points out, its decision that Ms. Webster was not totally disabled within the meaning of the policy was based on her then present education, training, and experience, not her ability to gain education or training that would qualify her for particular work in the future. The court need not decide, therefore, what effect, if any, a violation of the New Hampshire rule would have on review of Hartford's decision. The court also finds that Hartford's willingness to pay part of Ms. Webster's college tuition for only a limited

17

period does not raise a public policy issue.

Ms. Webster contends that Hartford's decision was arbitrary and capricious because it gave inconsistent interpretations of its policy language in three written explanations of its decision to terminate her benefits. In the September 29, 1995, letter from Carol Johnson to Ms. Webster notifying her of Hartford's decision to terminate benefits, Ms. Johnson quoted the applicable policy definition and then stated Hartford's determination that Ms. Webster was qualified for particular occupations in nursing. In the notification letter to the hospital, Ms. Johnson paraphrased the applicable policy definition saying "it must be shown that she is prevented by disability from doing any occupation or work for which she is or could become qualified by training, education or experience." Plaintiff's Appendix at H. Ms. Johnson then stated that Hartford found Ms. Webster was not disabled according to the definition without giving the specific determination provided in the letter to Ms. Webster. Id. In a letter to Ms. Webster's counsel pertaining to Ms. Webster's appeal of the termination of her benefits, Hartford (writer is not identified) paraphrased the applicable definition in terms more pertinent to Ms. Webster's particular determination: "she must be Totally Disabled from any occupation based upon prior experience, training and education."

18

The three letters Ms. Webster compares present explanations with varying levels of specificity about Hartford's determination in her case. The differences Ms. Webster notices between prior training and future training are due to references to her particular situation, which depended on her prior training, and statements of the general disability definition which included work a claimant could become qualified to do. Hartford's determination was clearly based on her qualifications as of October of 1995. The letters are not inconsistent with Hartford's definition of "totally disabled" or with its decision in this case.

Ms. Webster also contends that Hartford's decision is not supported by the medical evidence. She points to evaluations and opinions given by her treating physicians in late 1995 and 1996 to show that contrary to Hartford's determination, she was totally disabled in October of 1995. The evidence of record supports Hartford's decision.

Despite Ms. Webster's physical limitations caused by her knee injuries and the effects of rheumatoid arthritis, she was able to work part time as an operating nurse from March of 1994 until January of 1995 when she began attending a college program full time. She continued her full time college program until graduation in December of 1996. She returned to full time work

19

in January of 1997.

Dr. Shirreffs's evaluations during the period before Ms. Webster's benefits ended indicate that Ms. Webster was unable to work full time as an operating room nurse but do not rule out her ability to do other sedentary and, later, light duty work. In the evaluation form Dr. Shirreffs completed in December of 1995, he continued to find her able to do light duty work. Dr. Shirreffs also indicated that she had improved, but he then marked boxes to indicate that she was totally disabled from her previous job and any other job. Dr. Shirreffs opinion in 1995, therefore, contradicted his previous opinions about Ms. Webster's ability to work and contradicted his opinion that her physical condition continued to improve. Given the inconsistencies in Dr. Shirreffs's opinions, Hartford was justified in giving his opinion of total disability in December of 1995 little weight.

Although Ms. Webster's medical records confirm she had been treated for rheumatoid arthritis before her injury in April of 1993, the records do not show that rheumatoid arthritis interfered with her ability to work until Dr. Morgan's opinion in December of 1995. Even then, Dr. Morgan indicated that Ms. Webster was capable of sedentary work until he amended his opinion in a letter in August of 1996. The timing and inconsistencies of Dr. Morgan's opinions might reasonably be

20

interpreted as his efforts to help Ms. Webster gain benefits rather than to provide an objective view of her capabilities.

As part of Ms. Webster's appeal process, Hartford referred Ms. Webster to their Vocational Rehabilitation Unit for a "Transferable Skills Analysis." Hartford reported to Ms. Webster's counsel on January 31, 1997, that the analysis found Ms. Webster qualified for four jobs listed in the letter as of October of 1995. Hartford upheld its decision in part based on the results of the analysis.

Applying the appropriately deferential standard, the court concludes that the record supports Hartford's decision to terminate Ms. Webster's benefits. The decision was also based on a reasonable interpretation of the policy provision for disability benefits. As Ms. Webster has raised no trialworthy issue pertaining to her claim for benefits, based on the facts of record Hartford is entitled to summary judgment.

## Conclusion

For the foregoing reasons, Hartford's motion for summary judgment (document no. 6) is granted. The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 2, 1998

cc:   Gordon A. Rehnborg Jr., Esquire
      William D. Pandolph, Esquire

22