Marcello v. Healthsource          CV-98-291-JD  05/19/99

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE

Valerie R. and David R. Marcello

     v.                              Civil No. 98-291-JD

Healthsource New Hampshire, Inc.


                          O R D E R


     Valerie and David Marcello brought a declaratory judgment

action in state court seeking coverage from Healthsource New

Hampshire, Inc. for the costs of treatments for an in vitro

fertilization procedure.  Healthsource removed the suit to this

court and has moved for summary judgment (document no. 16).  For

the reasons that follow, summary judgment is granted in

Healthsource's favor.


                         Background

     Valerie and David Marcello are insured through a group

health plan with Healthsource New Hampshire, the Group Subscriber

Agreement ("GSA"), provided by Mr. Marcello's employer, Nashua

Corporation.  While some fertility treatment is covered by the

GSA, in vitro fertilization is specifically excluded.  Mrs.

Marcello sought treatment for infertility due to a diseased

fallopian tube.  After she underwent an unsuccessful intra-

uterine insemination ("IUI") procedure, which was covered by the

GSA, her treating doctors recommended that she consult with an infertility specialist and she was referred to Dr. Merle Berger of Boston IVF (in vitro fertilization).

Healthsource initially denied coverage for Mrs. Marcello's consultation with Dr. Berger citing the policy's exclusion of IVF procedures as a non-covered service. The Marcellos challenged the decision through the appeals process and finally discussed the problem with Healthsource's corporate counsel. When the purpose of the referral to Dr. Berger was later clarified by the referring physician as a new patient consultation not limited to IVF, Healthsource reversed its determination and coverage was provided for the initial consultation. Subsequently, Healthsource denied several requests for payment for other services that were later paid after the Marcellos disputed the denials.

Dr. Berger recommended IVF. The IVF procedure involves preliminary treatment that is also used for an IUI procedure including fertility drugs and specially processed sperm. Mrs. Marcello underwent an IVF procedure in the fall of 1997. First, Dr. Berger prescribed drug therapy to enhance fertility. Next, the eggs were retrieved and were combined in the laboratory with her husband's specially processed sperm. After fertilization, the embryos were transferred back to Mrs. Marcello, but the

2

procedure was ultimately unsuccessful. Healthsource denied coverage for the costs of the preliminary treatment and drug therapy as well as for the actual egg retrieval and fertilization procedure.

The Marcellos, represented by counsel, brought a declaratory judgment action in state court asking that Healthsource be compelled "to carry out the terms and provisions of the Marcellos' health insurance policy in good faith" and "to provide the Marcellos' [sic] with the medically necessary treatment they require for infertility and/or reimbursement for the medically necessary treatment they sought in accordance with the Group Subscriber Agreement." The action was removed by Healthsource to this court on grounds that the claims for benefits under the Healthsource plan were governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1001, et seq. Thereafter, the Marcellos' counsel withdrew, and the Marcellos continued their suit, proceeding pro se.

## Standard of Review

Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

3

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for the motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). If the moving party meets its threshold obligation, the nonmoving party must establish specific facts, with appropriate record references, showing that there is a genuine dispute of material fact as to each issue for which the nonmoving party bears the burden of proof at trial. See id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). For summary judgment analysis, the court construes the record in the light most favorable to the nonmoving party and indulges all reasonable factual inferences in its favor. See Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997). Thus, summary judgment will be granted when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998).

## Discussion

Healthsource moves for summary judgment asserting that the Marcellos' state law claims are preempted by ERISA, and that to the extent the Marcellos intend a claim under ERISA, the benefits they seek were properly denied. In response, the Marcellos do

4

not address the preemption issue, apparently accepting that their claim must be brought under ERISA, but argue that Healthsource's denial was improper.

A. <u>Preemption</u>

"ERISA provisions 'shall supercede any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee welfare benefit plan.'" <u>Demars v. Cigna Corp.</u>, No. 98-1962, 1999 WL 179668 *2 (1st Cir. April 6, 1999) (quoting 29 U.S.C.A. § 1144(a)). Both state statutory provisions and common law are state laws for purposes of preemption. <u>Unum Life Ins. Co. v. Ward</u>, No. 97-1868, 1999 WL 224560 *6 n.1 (U.S. April 20, 1999). An employee welfare benefit program under ERISA is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C.A. § 1002(3). A state law is deemed to relate to an ERISA welfare benefit plan, for purposes of preempting a state law claim, if in order to prevail on her claim, the plaintiff "would need to prove the existence of, or specific terms of, the [plan]." <u>Demars</u>, 1999 WL 179668, *2.

The plaintiffs do not contest ERISA preemption of their claims. The record presented for summary judgment supports the conclusion that the Healthsource plan provided by Nashua Corporation is an employee welfare benefit plan. New Hampshire's declaratory judgment law, RSA § 491:22, has been found to be superseded by ERSIA and not exempt. See, e.g., Tracy v. Principal Fin. Group, 948 F. Supp. 142, 144 (D.N.H. 1996); see also Webster v. ITT-Hartford Life, No. 97-373-JD, slip op. at 9 (D.N.H. Nov. 2, 1998); Patuleia v. Sun Life, 95-358-M, slip op. at 4-5 (D.N.H. Jan. 19, 1996); Schuyler v. Protective Life Ins., No. 92-192, slip op. at 9, (D.N.H. July 23, 1993). The court will not reexamine ERISA preemption of claims brought under RSA § 491:22 or examine preemption of any other state law that might be implicated by the plaintiffs' complaint, when the plaintiffs have not challenged preemption and the record is not developed in that regard. Accordingly, the plaintiffs' claims are governed by the provisions of ERISA.

B. Claim for Benefits

An individual beneficiary may bring an action pursuant to ERISA "to recover benefits due to him [or her] under the terms of his [or her] plan," 29 U.S.C.A. § 1132(a)(1)(B), or for appropriate equitable relief from a breach of fiduciary duty, §

1132(a)(3). No compensatory or other damages are recoverable under either § 1132(a)(1)(B) or § 1132(a)(3). See, e.g., Conners v. Maine Med. Ctr., No. 98-273-P-C, 1999 WL 130307 at *21 (D. Me. March 3, 1999); Dall v. Chinet Co., 33 F. Supp. 2d 26, 38 (D. Me. 1998); Andrews-Clarke v. Travlers Ins. Co., 984 F. Supp. 49, 56 (D. Mass. 1997). Actions challenged under either section are to be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Terry, 145 F.3d at 34; see also Varity Corp. v. Howe, 516 U.S. 489, 514 (1996); Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

In this case, the plaintiffs contend that the defendant improperly denied coverage for drug therapy and services that were performed as part of the IVF procedure. They argue that the preliminary treatment should be covered, even when it is prescribed as part of an excluded IVF procedure, because the same treatment is covered when prescribed for other procedures such as IUI. The plaintiffs also argue that because the exclusion of IVF procedures does not explicitly list the preliminary treatment, the exclusion should be not be construed to exclude that treatment. Since the defendant has not demonstrated, or even claimed, that the requisite discretionary authority was given to

the plan administrator or fiduciary, the decision to deny benefits is reviewed under a de novo standard for summary judgment.

Federal common law is used to interpret the provisions of an ERISA benefit plan. Morais v. Central Beverage Corp., 167 F.3d 709, 711 (1st Cir. 1999). A plan is construed using "common-sense canons of contract interpretation" that are derived from general state law principles. Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585 (1st Cir. 1993). Unambiguous plan language is interpreted according to its plain meaning taken in context. Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995) (quotation omitted). "'Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.'" Id. (quoting Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989)).

The applicable exclusion in the GSA policy provides in pertinent part:

> The following are items and services that are deemed not Medically Necessary under this Group Subscriber Agreement and are not Covered Services, without regard to whether they are ordered or prescribed by a physician (but this list is not all-inclusive):

8

. . .

(5) Fertility.  (a) In vitro (test tube) fertilization,
. . . ."

The exclusion clearly and explicitly exempts IVF from coverage
but does not define the scope of the excluded service.  The
plaintiffs point to other exclusions in the GSA that include
lists of excluded services that further define a more general
exclusion.  For example, under the exclusion for "Weight Control"
the GSA lists, among other things, "Surgical procedures and
associated care for the treatment of obesity . . . ."  Because
the "Fertility" exclusion lists IVF, but does not list related
services or "associated care" as in some of the other exclusions,
the plaintiffs contend the exclusion should be interpreted not to
exclude services and treatment merely related to the IVF
procedure.

To the extent the scope of the IVF exclusion is unclear or
ambiguous in the context of the GSA, the ambiguity raises a
factual question that requires consideration of extrinsic
evidence to discern the parties' intent.  Smart, 70 F.3d at 178-
79.  Ambiguities or omissions are generally not construed against
the insurer in the ERISA context.  See Rodriguez-Abreu, 986 F.2d
at 586; Mauser v. Raytheon Co., No. 97-10215, 1999 WL 242391 *1
(D. Mass. April 20, 1999).

The defendant offers the affidavit of Dr. Peter J. Mahar,

9

the Medical Director for Healthsource and a physician licensed in New Hampshire, to explain and define the IVF procedure excluded in the GSA. Dr. Mahar defined the IVF procedure as:

> In vitro fertilization ("IVF") involves giving fertility drugs to enhance and orchestrate a woman's ovulation, removing eggs from a woman's ovaries, collecting and cleaning her partner's sperm, mixing the sperm and eggs in the laboratory and, if fertilization occurs, returning the embryo(s) to the woman's uterus to develop naturally.

Mahar affidavit at ¶ 3. The plaintiffs do not dispute Dr. Mahar's definition of IVF, and do not offer a contrary definition of an IVF procedure to support their narrow interpretation of the IVF exclusion. Given Dr. Mahar's undisputed definition of IVF, including the preliminary treatment, the GSA exclusion of IVF also excluded coverage for treatments necessary for an IVF procedure.

The plaintiffs also argue that because the IUI procedure, which is covered, uses the same preliminary treatment as the IVF procedure, the preliminary treatment should be covered for both. Based on the record presented for summary judgment, the preliminary treatment would not have been prescribed for Mrs. Marcello except as part of the IVF procedure, and would not have been medically necessary but for the planned IVF procedure. Since the treatment leading up to Mrs. Marcello's IVF procedure cannot be separated from the IVF procedure itself, the only

10

reasonable interpretation of the exclusion is to exclude coverage of the preliminary treatment as part of the IVF procedure. Accordingly, benefits for the treatments preliminary to the IVF procedure were properly denied.

In their objection to summary judgment, the plaintiffs also contend that Massachusetts residents who work at Nashua Corporation, who are insured under the same plan, and who pay the same premiums as they do are entitled to coverage for IVF procedures under Massachusetts law. The plaintiffs argue that they should be entitled to the same coverage for the same premiums. Although the plaintiffs say that the defendant's corporate counsel, Sharon Hecker, told them about different coverage for Massachusetts residents, the plaintiffs have not included any evidence in support of their contention. See Fed. R. Civ. P. 56(c) and (e). In addition, the plaintiffs did not raise the issue of different treatment in their complaint. To the extent that any claim might exist alleging discrimination based on the state of a beneficiary's residence, such a claim has neither been pled nor sufficiently developed in the record to be considered in opposition to the defendant's motion for summary judgment.

11

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 16) is granted. The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

May 19, 1999

cc:  Valerie R. Marcello, pro se
     David R. Marcello, pro se
     William D. Pandolph, Esquire

12